### DANIEL SPENCER *v.* Z. H. P. HALE.

*Sale.　Statute of frauds.　Common carrier.*

When goods are purchased under a parol contract, without the payment of any earnest money, the delivery of them to a carrier, selected and named by the purchaser, and their acceptance by the carrier, constitute a sufficient receipt and acceptance of them by the defendant to take the case out of the statute of frauds.

The right of repudiation of the goods upon delivery, which the purchaser possesses in the case of a parol sale within the statute of frauds, must be exercised immediately, or he will be regarded as having accepted the goods.

BOOK ACCOUNT. The following facts appeared from the auditor's report:

In the latter part of May, 1853, the defendant went to Shaftsbury to buy fence posts to be used on the Albany Northern Railroad. He met the plaintiff at the depot in Shaftsbury, and asked him if he had any chestnut fence posts to sell. The plaintiff

replied that he had, and the parties thereupon went out upon the depot grounds where the plaintiff had a quantity of posts which they then examined. After examining them, it was agreed by parol between the parties, that the defendant would take from the lot of posts shown him at least ten thousand, at five and a half cents each. The posts were to be sound, six and a half feet long, and at least three inches in diameter at the smaller end, and were to be delivered by the plaintiff upon cars, to be furnished by the defendant, at the depot at Shaftsbury. About the 13th of June, 1853, the defendant sent, or caused to be sent, four cars to Shaftsbury depot for the purpose of receiving the posts, and the plaintiff immediately loaded these cars with two thousand eight hundred and two posts from the piles upon the depot grounds which the parties had examined. These cars were then forwarded by the station agent at Shaftsbury to the defendant at Schaghticoke, New York. Within a day or two after this time, the plaintiff met the defendant in Troy, and told him the posts had been forwarded to him, and asked him for payment therefor, and the defendant promised to send him some money in a few days. The defendant did not send the money, but on the 22d of June, 1853, as an excuse for not sending it, wrote to the plaintiff that he had been directed by one Collins, for whom he was obtaining the posts, not to pay for them, and said that he had not seen the posts himself since they were delivered at Schaghticoke, but that Collins said not more than half of those sent would answer any purpose, and that Collins had given his teamsters orders not to haul any which were unfit for use. It did not appear whether any of these posts had been used or not. The defendant refused to send any more cars or to take any more posts under the contract.

The auditor found that the posts sent, as to quality, were in compliance with the contract. The defendant testified, and so the auditor found the fact to be, that he never accepted or meddled with the posts in any manner whatever after they arrived at Schaghticoke, and that nothing was paid by the defendant as earnest money.

The county court, at the June Term, 1856,—PIERPOINT, J., presiding,— rendered judgment for the plaintiff for the contract price of the posts delivered. Exceptions by the defendant.

*James L. Stark,* for the defendant.

The contract is within the statute of frauds and no action can be sustained thereon.

The delivery of the two thousand eight hundred and two posts on board the cars, agreeably to the contract, was not an acceptance within the meaning of the statute.  *Hunt* v. *Hecht,* 20 Eng. Law and Eq. 524; *Holmes* v. *Hoskins,* 28 Eng. Law and Eq. 564; *Howe* v. *Palmer,* 3 B. and Ald. 321, 5 Eng. Com. Law 303; *Hanson* v. *Armitage,* 5 B. and Ald. 557; *Baldey* v. *Parker,* 2 Barn and Cress. 37; *Phillips* v. *Bistolli,* 2 Barn and Cress. 511; *Nicholls* v. *Plume,* 1 C. and P. 271; *Smith* v. *Surnam,* 9 Barn and Cress. 561; *Norman* v. *Phillips,* 14 Mees. and Wels. 277; *Bushel v. Wheeler,* 15 Q. B. 442; 2 Parsons on Cont. 329.

The delivery of the posts to a common carrier and a receipt of them by him, was not an acceptance of them within the statute. unless the carrier had authority to accept them.  Chitty on Cont. 344; Story on Cont. 311; 2 Parsons on Cont. 328; *Hanson* v. *Armitage,* 7 Eng. Com. Law 191; *Acebal* v. *Levy,* 10 Bing. 376,

*H. Canfield,* for the plaintiff.

The facts in the case clearly indicate the plaintiff's intention to part with all possession and control of, or lien upon the posts after they were placed upon the cars.

The defendant, by furnishing the cars for the reception of the posts, by directing their destination through the station agent, and by promising payment to the plaintiff after the posts had been forwarded to Schaghticoke, clearly indicated his intention to take possession and control of the posts *as his own,* after they were placed upon the cars.

Hence there was a delivery by the plaintiff and an acceptance by the defendant under the statute, 2 Parsons on Cont. 322 and notes.

The opinion of the court was delivered by

REDFIELD, Ch. J.  This is an action of book account to recover the price of a quantity of fence posts sold by the plaintiff to the defendant, and by his direction delivered on board cars, at the railway station in Shaftsbury, furnished by the defendant for that

purpose; and which by the station agent at that place were forwarded to the defendant at some place in the state of New York. There is nothing in the case to show that the parties contemplated a delivery or acceptance at any other place than Shaftsbury, and every reason to presume that they did not. It does not appear that the plaintiff knew to what particular place the posts were to be forwarded, or by what instrumentality, although it is probable he may have known more on these points than is stated in the report. He had nothing to do with the conveyance either in selecting the carrier or becoming in any way responsible for his conduct.

The delivery and acceptance were then perfected, as it seems to us, at the time the posts were sent from the station at Shaftsbury. It is undoubtedly true that the defendant at that time and place had a right to repudiate the posts after delivery. In other words, in order to perfect the case, under the statute of frauds, something more is necessary than a mere delivery of the goods. In the language of the statute, the purchaser must " accept and receive part of the goods." But this may be constructive as well as actual, and it may be done through the instrumentality of an agent of the purchaser as well as personally.

It was once held, that a delivery to a common carrier, not selected by the purchaser, by the latter's direction, was an acceptance by the purchaser, within the statute. *Hart* v. *Sattley,* 3 Camp. 528. In this case the judge told the jury that the purchaser must be considered as having constituted the carrier his agent " to accept and receive the goods." But this case has not been followed in later cases. *Hanson* v. *Armitage,* 5 B. and Ald. 557; *Acebal* v. *Levy,* 10 Bing. 376.

But it seems now to be regarded, as well settled, that if the purchaser name the carrier he is bound by the delivery to such carrier. The carrier becomes his agent for the acceptance, and if the goods are accepted by the carrier and forwarded to the purchaser, he becomes liable for the price. 2 Parsons on Cont. 328, 329; *Bushell* v. *Wheeler,* 15 Q. B. 422. But this will depend upon the intention of the parties to be gathered from the circumstances of each case to some extent.

The present case is not different in principle from what it would

be if the goods were to have been sent to New Orleans, or to Liverpool, as it seems to us. In neither case would it be expected the seller would take the risk of the conveyance, or give the purchaser an absolute election, whether to accept the goods on their arrival or not. This case, as it seems to us, is not different from what it would have been if the delivery were to have been made upon the grounds of the company, about their station. The railway company had been directed by the purchaser to load them into cars. And in such a case there could be no ground to question that the removal of the goods, although by an agent, and that agent a common carrier, would be a sufficient receipt and acceptance. When each case is determined upon its facts, as cases must be upon this subject, to a considerable extent, they will not always appear consistent with each other. There will be extreme cases which seem to impinge upon the principle. But they cannot be followed any further than they follow the principle upon which they profess to go.

The cases all agree that the purchaser may so conduct as to waive the right of repudiation of the goods, which, under the statute, he undoubtedly possesses up to and at the time of delivery, and in some cases until the goods come to the actual custody of the vendee. In the present case there is nothing to induce the court to believe that the parties probably contemplated any such right of repudiation after the goods left the station at Shaftsbury. It seems to us, the more reasonable construction of the contract is that no such right was expected to have been exercised after that time. If not, then the omission of the defendant to exercise it at the proper time was a waiver of the right and equivalent to its positive exercise by acceptance.

But if the contract could fairly receive the construction that the purchaser had the right of election after the arrival of the posts and an opportunity of inspection, it seems to us that he must be regarded in the present case, as having acquiesced in the delivery and acceptance, so long and in such a manner that his subsequent rejection cannot be held binding upon the plaintiff. For it seems that a day or two after the posts were forwarded, the defendant was informed by the plaintiff of that fact, and that he then promised to send the money for the price, and gave no intimation of

any dissatisfaction for about ten days, and never returned the posts.

It can hardly be supposed if the defendant had any such right of election after the arrival of the goods at their destination, that it could have been expected, under the circumstances, that he should have been allowed so long a time for its exercise, or that the plaintiff should be left to find his goods when he could, and return them at his own expense. In fact, the defendant's acquiescence is an acceptance. The cases all agree that even where the vendee has an election to repudiate the delivery, he must do it immediately, or he is bound by the acquiescence as an acceptance. The strongest case for the defendant read at the bar, that of *Hunt* v. *Hecht*, 20 Eng. L. and E. 524, holds expressly that the purchaser may, by his conduct, deprive himself of the option secured to him under the statute. This we think the defendant in this case did do, if his option were to have been exercised when the goods were delivered on board the cars, by allowing his agent to forward them to him in New York; and if the election could have been exercised after the arrival of the articles, which it seems to us unreasonable to allow, then the right is expressly waived by the promise to pay, and impliedly by the delay. So that upon every ground it seems to us the plaintiff is entitled to recover the price of the posts.

Judgment is affirmed.