## WATSON B. GORHAM *v.* FISHER & ROBERTS.

### *Statute of frauds.*

In order to take a parol contract for the sale of personal property, the price of which is over forty dollars, and where nothing is paid by the purchaser, out of the statute of frauds, so as to render it binding upon him, there must be an acceptance of the property, or some portion of it.

The plaintiff sold by parol, to the defendants, a quantity of logs at a certain price per *M* feet, board measure. The plaintiff was to procure the logs to be sawed at his own expense, as the defendants should direct. At the request of the plaintiff, the defendants directed the miller to saw them in such man- ner as they wished, and they also employed a man to draw the lumber away from the mill after it was sawed. The person so employed neglected to do this, and the plaintiff drew them from the board-way himself, and then called upon the defendants to take the boards and pay for them, which they refused to do. Neither party knew, when the contract was made, the number or measurement of the plaintiff's logs. The price of the boards under con- tract was over forty dollars, and nothing was paid by the defendants there- for, or to bind the agreement. *Held,* that the contract was for the purchase of *boards,* and not logs, and that there had not been such an acceptance of the boards as would take the case out of the statute of frauds, and render it binding upon the defendants.

BOOK ACCOUNT. The auditor reported the following facts :

The plaintiff's account amounted to forty-six dollars and four cents, and was for three thousand eight hundred and thirty-seven feet of basswood boards.

The plaintiff had a quantity of basswood logs at a saw-mill in Putney, which he sold by parol to the defendants, at twelve dollars per M. feet, board measure. The plaintiff was to procure the logs to be sawed into boards at his own expense, and they were to be sawed as the defendants should direct. The defendants directed the miller how the logs should be sawed, and they were sawed accordingly. At the time this direction was given, the defendants informed the miller that they had bought the logs. The defendants agreed with one Smith to draw the lumber away from the board-way and to Brattleboro, for them, which he, however, neglected to do, and as the boards were sawed, the miller called on the plaintiff to draw them from the board-way, which the plaintiff did, and piled them up at a place designated by the miller. After the logs were a wed into boards, the plaintiff notified the defendants of the meas-

urement, and demanded payment for them, but the defendants refused either to pay for or to take the boards. Nothing was ever paid towards this lumber by the defendants, neither was there ever any delivery of any part of it, except as above mentioned.

After the contract was made between the parties, and before the logs were sawed, the defendants endeavored to sell the lumber to one Knights, but did not succeed in doing so. The contract did not provide who should measure the boards. The plaintiff told the defendants, as they knew how they wanted the logs sawed, to direct the miller in that respect, and that he, the plaintiff, should have nothing more to do about it. Neither of the parties at the time of the contract knew the exact number of logs to be sawed.

The county court, at the April Term, 1857,—UNDERWOOD, J., presiding,— rendered judgment for the plaintiff, upon the report, for the amount of his account. Exceptions by the defendants.

*Keyes & Howe,* for the defendants.

*Bradley & Kellogg,* for the plaintiff.

The opinion of the court was delivered by

BARRETT, J. The question in this case is whether there was such a delivery and acceptance of the property as is required by the statute of frauds.

The case shows that the property contracted for exceeded forty dollars in value; but there was no contract in writing, and that nothing was paid upon the contract, as earnest money, towards the price of the lumber.

It is to be regarded as well settled, that in order to render a contract, such as was made in this case, for the sale and purchase of personal property, binding on the purchaser, there must be an acceptance of the property, or of some portion of it.

This was recently decided on the present circuit in Bennington county,* on full argument and consideration, and in conformity with what we understand to be the concurrent authority of the recent English cases on the subject; *Hunt* v. *Hecht* et al., 20 Eng L. & E. 524.

When in the present case, did such acceptance take place? In

* See Spencer *v.* Hale, ante. page 314.

Gorham *v.* Fisher & Roberts.

the view we are compelled to take of the report, there was a bargain between the parties, that the defendants should buy of the plaintiff, the lumber to be made of a certain lot of mill logs, subject to delivery and acceptance when said logs should have been sawed into boards, by the plaintiff, agreeably to directions to be given by the defendants.

It can hardly be imagined that the plaintiff viewed the transaction otherwise. Every feature of the case indicates that he understood, from the outset, that the contract was for the sale of the logs, as *boards*, and that the property was not, by its terms, ready for, or the subject of delivery under the contract, till the logs should have been converted into such kind of boards as the defendants direct. His course is only consistent with such an understanding, both in drawing the boards away from the board-way, in the failure of Smith to do it, and in making his charge to the defendants, as *for so many feet of boards*, instead of so *many logs*, measuring so much, board measure. It seems quite significant that we are right in this, that neither party counted or knew the exact number of the logs to be sawed under the contract. It seems very unlikely that the plaintiff understood that he was contracting to sell to the defendants a certain lot of logs, as such, to become the property of the defendants in their condition as *logs*, and yet, should have taken no means to ascertain what particular logs, and what quantity were covered and included by the contract.

On the other hand, we do not regard the defendants' conduct as inconsistent with the view we thus take of the contract.

I. Their directing the miller how they would have the logs sawed, was provided by the contract itself to be done by them. It indicated neither delivery nor acceptance of the logs. That direction was to be given by them, in order to enable the plaintiff to perform the contract on his part.

II. Their agreeing with Smith to draw away the lumber indicates only a providing for the acceptance of it, when the logs should have been converted into boards and made ready for delivery by the plaintiff. The very term, "*lumber,*" shows that Smith was not to meddle with it till the *logs* had become *boards.* It can not be supposed that the defendants wanted, or would have the "*lumber,*" while yet in the form of *logs*, drawn to Brattleboro.

And then, too, Smith was to draw them away from the *board-way*, a place not occupied by mill logs till after they have been sawed into *lumber*.

III. The expression in the report "that the defendants bought the logs of the plaintiff, and that they notified the miller, when they directed him how to saw the lumber, that they had bought the logs," can only mean that they had contracted for the logs when converted into lumber; and not that the logs had been delivered to, and accepted by them, and were then their absolute property.

IV. The conversation between the plaintiff and the defendants, in which he told them " as they knew how they wanted the logs sawed, to give directions to the miller, and the plaintiff should have nothing more to do about it," was only a request to the defendants to do what was provided by the contract for them to do, in order to enable the plaintiff to perform his part of the contract, to have the logs sawed as the defendants should direct. It was asking the defendants to give the directions immediately to the miller, instead of giving them to the plaintiff himself.

V. That " after said contract was made, and before the logs were sawed, the defendants tried to sell said *lumber* to Knights," does not indicate any assertion or exercise of ownership or control by the defendants over the logs, in their condition *as logs*. They were not trying to sell the *logs*, but the *lumber*; which clearly indicates that they were trying to dispose of the property, as it should become theirs, in the condition in which the plaintiff had contracted to deliver it. We should be obliged to revise the *nomenclature* of this kind of property and business, in order to hold the term "lumber," to signify unsawed logs, lying in the yard of a saw mill.

Considering, then, the transaction constituting the contract, and the conduct of the parties in relation thereto, the only sensible view seems to be that the plaintiff was to convert the logs into boards, and when so converted, the delivery to, and acceptance by the defendants were to occur. When the delivery and acceptance should take place, the contract would become obligatory upon the de endants to pay the stipulated price. Up to that time the contract would remain executory, and the title to the property would continue to be in the plaintiff. This view is alone consistent with the fact, first, that the measurement of the logs could only take

place after they had been sawed into boards; and, second, that payment could not be claimed till the measurement had been made. This view is consistent alone with the fact that it could not be known whether the plaintiff had performed the contract on his part, by having the logs sawed into boards " as the defendants directed," until the sawing had been done. Unless they should have been so sawed, it will hardly be pretended that the defendants would be liable to the plaintiff upon the contract. And it is clear that if the plaintiff had caused or permitted them to be sawed differently from the defendants' directions, they would not have been bound to accept or pay for them.

It is clear, upon principle and abundant authority, that, up to the time when the property was put in condition for them to judge whether the contract had been performed by the plaintiff, the defendants had the option whether to accept it or not. When the property had been put in that condition, and they were notified of the fact, and called on to exercise that option, they refused to accept the property. As the contract could not bind them till the property had been accepted, that refusal left it under the statute of frauds, as it had been throughout, void; and of course not to be enforced in this action.

The judgment of the county court is reversed, and judgment on the report for the defendants.