HON. HOYT H. WHEELER,
HON. TIMOTHY P. REDFIELD, } ASSISTANT JUDGES.
HON. JONATHAN ROSS,

---

STRONG, WHITNEY & CO. *v.* JAMES DODDS.

*Privileged Communication. Statute of Frauds. Principal and Agent.*

The plaintiffs' agent, who, as such, had sold the goods in question to the defendant, went to an attorney to have him bring suit to recover the price thereof. The attorney, after hearing the agent's story, declined to bring the suit, solely because he thought it could not be maintained. *Held*, that the communication was privileged.
The section of the Statute of Frauds that relates to the sale of goods, wares, and merchandise for the price of $40 or over, is unlike the section providing that no action shall be brought in certain case, unless the promise, &c., or some memorandum or note thereof, shall be in writing. This does not invalidate the contract, but only takes away the right to prove it by parol; and if a defendant allows it to be proved thus without objection, he thereby waives the statutory provision, and the court has only to enforce the contract as proved; while that does not wholly forbid proving the contract by parol, but renders it invalid when thus proved, unless the requirements of the section have been complied with.

Strong et al. *v.* Dodds.

The plaintiffs' traveling agent sold a bill of goods to the defendant through his clerk, and ordered the goods of the plaintiffs by letter. *Held,* that said agent could not be regarded as the agent of the defendant in writing and sending said letter; and that said letter was not such a memorandum or note of the contract, as contemplated by the Statute of Frauds.

The plaintiffs, pursuant to the defendant's order, packed said goods and marked them to the defendant, and delivered them to a railroad company for transportation to him, and duly advised him thereof. The goods never came to the possession of the defendant, but were lost by the railroad company. *Held,* that said company was the agent and servant of the defendant, and that the receipt of said goods by it, was such an acceptance and receipt thereof by the defendant, as to take the case out of the Statute of Frauds.

Book Account. The auditor reported as follows :

" The plaintiffs are a firm located and doing business as wholesale dealers in dry goods in Albany, New York. The defendant was a merchant residing and doing business in North Hero. On the 16th of November, 1872, one James F. Gilbert, who was then acting as travelling agent and salesman for the plaintiffs, called at the defendant's store, and the defendant, through his son, Orlo S. Dodds, who was then acting as clerk for his father, and had authority to purchase goods for him, verbally ordered a bill of goods of said Gilbert. Gilbert mailed to the plaintiffs a list of the goods ordered, which the plaintiffs received in due course of mail, and in pursuance of said order, packed said goods, and marked them to ' James Dodds, North Hero, Grand Isle County, Vermont, R. R., *via* Fairhaven to St. Albans,' and delivered them to the Renssalaer & Saratoga department of the Delaware & Hudson Canal Company, at their freight depot in Albany, to be shipped to St. Albans, and received of said company a bill of lading therefor. At the time said Orlo ordered said goods, he directed the said Gilbert to have them sent by railroad *via* Fairhaven to St. Albans. The goods packed and shipped by the plaintiffs, corresponded in quantity and quality with the goods ordered by the defendant. At the time of shipment, the plaintiffs sent the defendant a bill of the goods, which was received by the defendant on or about the 21st of November, 1872 ; which bill contained a statement of how the goods were shipped. In a few days after the defendant received notice of the shipment of said goods, the said Orlo went to St. Albans to get the goods from the railroad, but they not having arrived, he went again in a few days, and sent for them on two or three occasions ; but the goods never reached St. Albans. On the 7th of December, 1872, the defendant wrote and mailed a letter to the plaintiffs, which they duly received, of the tenor following ; ' The bill of goods ordered

through agent, we cannot receive, as it is too late in the season. Have lost much time and expense in going to St. Albans after them.' The defendant, in subsequent letters to the plaintiffs which were received by them, declined to have anything to do with the goods, except that in one letter he offered, if the plaintiffs would send the goods to St. Albans and permit him to select such as he chose and return the rest, he would do that. The only notice of the shipment of the goods that the defendant received prior to the 7th of December, was the invoice which the plaintiffs mailed to him on the 21st of November, and which the defendant received in due course of mail.

"There was no testimony tending to show that the failure of the goods to reach St. Albans, was the fault of either the plaintiffs or defendant. The defendant made no effort to see if the goods had come, beyond going to St. Albans two or three times, which he did shortly after he received a bill of the goods from the plaintiffs. Some time in February, 1873, the defendant heard a flying report that the goods were in Plattsburgh, New York ; and about the same time the said Orlo received a letter from the plaintiffs, stating that the goods were in Plattsburgh ; but the defendant made no effort to ascertain if such was the fact. The goods were mostly for fall and winter use ; and the defendant, at the time the goods were ordered, desired that they should be sent immediately, and the plaintiffs, as soon as they received the order, packed and shipped them without delay. At the time the defendant heard the report that the goods were in Plattsburgh, some of the goods were somewhat out of season. The defendant claimed in argument, that the contract for said goods came within the Statute of Frauds ; but no objection was made by the defendant on that account, or any other, to the admissibility of testimony offered by the plaintiffs in support of their claim ; and the defendant introduced parol testimony in relation to the alleged contract, that agreed in several substantial particulars with the testimony introduced by the plaintiffs.

"The defendant introduced a witness to prove certain alleged admissions of said Gilbert. The plaintiffs objected to the admissibility of the testimony, and the witness on being inquired of, testified that Gilbert came to his office in North Hero some months after the 16th of November, 1872, and desired the witness to bring a suit against the defendant, to recover for the goods in question, and that after hearing Gilbert's story, witness declined to bring suit, on the sole ground, as he testified, that he did not think a suit could be sustained. The defendant offered to show what Gilbert said to the witness on that occasion, and claimed that what he said

was material to the issue in this case, but did not disclose precisely what declarations he expected to prove. The witness at the time of the interview between him and Gilbert, was a practicing attorney at law. The plaintiffs objected to the admissibility of the testimony, on the ground that it was a privileged communication; and the auditor sustained the objection, and excluded the testimony.

"All the items of account in the plaintiffs' specifications, are allowed as charged."

The court, ROYCE, J., presiding, rendered judgment on the report, *pro forma*, for the defendant; to which the plaintiffs excepted.

*Noble & Smith* and *Bryant Hall*, for the plaintiffs.

It was competent for the defendant to make Gilbert his agent to communicate to the plaintiffs the defendant's order for the goods in question. And that this was the case, appears clearly from the letter of the defendant incorporated into the auditor's report. Chit. Cont. 69. The signature of the agent is sufficient to avoid the statute, under the circumstances of this case. The delivery of the invoice bill, November 21, and the subsequent acquiescence of the defendant therein, as shown by sending several times for the goods until December 7, establish a contract which may be enforced notwithstanding the statute. 2 Parsons Cont. 291-2-3; *Coddington* v. *Goddard*, 16 Gray, 436; *Whitwell et al.* v. *Wynn et al.* 11 Mass. 10; *Saunderson* v. *Jackson*, 2 B. & P. 238. So far as the delivery of the goods in question is concerned, there was a sufficient compliance with the statute. Delivering the goods to a common carrier, marked to be shipped to the buyer, has always been held to vest the title of the goods in the purchaser. *Ludlow* v. *Bowne & Eddy*, 1 Johns. 1, 14; 3 Kent, (4th ed.) 449; 3 Kent Com. 449. The delivery of the goods to a carrier selected by the defendant, and the shipment of them as the defendant directed, constituted such a delivery that the property vested in the defendant; and the receipt of the goods by the carrier selected by the defendant, was an acceptance by his agent, and would, of itself, take the case out of the statute. 2 Parsons Cont. 328, 329; *Spencer* v. *Hale*, 30 Vt. 314.

The auditor, in finding for the plaintiffs, must have found that the defendant accepted the goods; and since the facts in the case so conclusively support the conclusion that the auditor must have arrived at, the court can do nothing less than to reverse the judgment, and render judgment upon the report for the plaintiffs. Courts never revise the finding of facts by an auditor, where there is testimony tending to support such finding. *Kent* v. *Hancock*, 13 Vt. 519.

The question as to the Statutes of Frauds, was not taken till the argument of the case, and the plaintiffs insist that after the contract has been proved by parol without objection, it is too late to raise the question of the statute. 1 Chit. Pl. 332; *Smith* v. *Smith*, 14 Vt. 446; *Adams et al.* v. *Patrick*, 30 Vt. 520; *Montgomery* v. *Edwards*, 46 Vt. 152.

*H. R. Beardsley*, for the defendant.

It is insisted that there was not such a delivery of the goods to the defendant as to make him liable for them under the contract as reported. The title never passed from the plaintiffs to the defendant. The contract being verbal, and the defendant never having accepted the goods, but on the contrary having refused to accept them, the case comes directly within the Statute of Frauds, and the plaintiffs cannot recover. *Norman* v. *Phillips*, 14 M. & W. 277; *Johnson* v. *Dodgson*, 14 M. & W. 653, 656; 1 C. & P. 272; *Hanson* v. *Armitage*, 5 B. & Ald. 557; *Acebal* v. *Levy*, 10 Bing. 376; Chit. Cont. 344, 345, *et seq.* English and American cases on this subject might be mentioned *ad infinitum;* but we have no occasion to go out of this state for decisions equally sound and conclusive. *Gibbs* v. *Benjamin*, 45 Vt. 124, and ex-Judge REDFIELD's commentary on the case, Law Register; 30 Vt. 314.

Again, the defendant seasonably notified the plaintiffs that he would not accept the goods, and never has, in fact, accepted the goods. Actual acceptance is indispensable, in order to avoid the operation of the statute.

After the testimony in reference to the contract between the parties had all been introduced, and the case was being argued, the defendant's counsel claimed and insisted that the facts estab-

lished by the testimony brought the case within the Statute of Frauds. The auditor put into his report the fact, that no objection was made by the defendant to the admissibility of the testimony offered by plaintiffs in support of their claim. He probably meant, that the defendant should have objected to any testimony being introduced, showing what the contract was. How could the auditor, or this court, decide whether the contract came within the Statute of Frauds or not, until the contract was proved by testimony?

Lastly, we think the auditor erred in excluding the testimony offered to be shown regarding the statements of Gilbert, the plaintiffs' agent, made to the witness when applied to to make a writ against defendant. It is apparent that the relation of counsel and client did not exist. On the contrary, the witness declined to act as counsel. *Earle* v. *Grout*, 46 Vt. 113.

The opinion of the court was delivered by

Ross, J. I. The auditor correctly excluded the witness offered to show the admissions of James F. Gilbert. Gilbert was the agent of the plaintiffs in making the sale of the goods, and went to the witness, a practicing attorney, to have him bring a suit to enforce payment for the goods. The witness so far entered into the employment of the plaintiffs as to hear Gilbert's account of the transaction, and then declined to bring the suit, for the sole reason that he did not think a suit could be maintained. On being asked to bring a suit for the plaintiffs, the witness, by listening to the detailed account of the transaction, and advising that a suit could not be maintained, was as directly in the employment of the plaintiffs, and as much entitled to payment for his services, as he would have been if he had made the writ in the suit. The communications made to him by Gilbert are privileged. The witness stood in a different relation to the plaintiffs from what the witness did in *Earle* v. *Grout*, 46 Vt. 113. In that case, the witness, though talked with, and asked by Earle his opinion as to whether he could maintain a suit against Grout, understood at the time of the conversation that Earle did not de-

45

sire or intend to employ him to bring a suit, or to counsel him in regard to his rights in the matter.

II.    Neither does this case fall within the principle enunciated in *Montgomery* v. *Edwards*, 46 Vt. 151.   In that class of cases, the plaintiff is under a disability in proving his case, because the contract is not in writing.   The contract which is the foundation of the suit in such cases, is valid, but the statute has taken away the plaintiff's right to prove it except by written evidence.   When the defendant allows such a contract to be proved by parol evidence, he waives this statutory objection, and the court has only to enforce the contract as proved.   The section of the statute within the operation of which the present case falls, does not wholly forbid the proving of the contract by parol testimony, but provides that the contract, though proved by such testimony, shall not be valid, unless " the purchaser shall accept and receive a part of the goods so sold, or shall give something in earnest to bind the bargain, or in part payment."   The plaintiff could not object to the showing of the contract of the sale of the goods by parol testimony.   His only right was to insist, as he did before the auditor, that he was not bound by such contract so proven, unless he had accepted and received the goods.   Hence the vital question in the case, is :

III.    Did the defendant accept and receive the goods in question ?   We denominate this as the vital question, because we do not think that Gilbert, the plaintiffs' travelling agent and salesman, who appeared at the defendant's store and bargained the goods in question to the defendant's son and agent, can be regarded as the defendant's agent in writing out and transmitting to the plaintiffs a bill of the goods bargained for.   Both parties were represented in the transaction by agents.   The kinds, quantities, qualities, and prices of the goods were agreed upon between these agents.   The transaction is, in law, the same it would be if one of the plaintiffs had been present in person, and had there agreed upon the same particulars with the defendant in person, and had received from the defendant his verbal order for the goods, and had written it out and forwarded it to the firm of which he was a

member. It is not the personal power and presence of the agent that binds, but the legal presence and power of the principal in the person of the agent. Gilbert, in reducing to writing and forwarding the order, was not representing, or acting for, the defendant, but was recording and transmitting to his principals, the transaction which, in their name and behalf, he had concluded with the defendant by parol. The bill of goods signed and forwarded by him to the plaintiffs, was not " some note or memorandum " of the bargain, made in writing, and " signed by the defendant," such as is contemplated by § 2, ch. 66, Gen. Sts., to remove the sale from the operation of the Statute of Frauds. The facts reported by the auditor, in legal effect, are, that the defendant ordered the goods in question, therein specifying the kinds, quantities, and qualities, and directed the plaintiffs to deliver them, duly packed, to the railroad company, to be transported via Fairhaven to him at St. Albans. The plaintiffs selected and packed the goods, complying in all respects with the defendant's order, and delivered them to the common carrier named, marked as directed, and advised the defendant thereof. This was done November 21st. The goods never came to the personal control or acceptance of the defendant. After going to St. Albans two or three times for the goods, and sending to inquire several times, the defendant, December 7, wrote the plaintiffs that he should not receive the goods, as it was too late in the season, &c. That there must be a receipt and acceptance by the purchaser of some part of the goods, when the sale is oral, to remove the statute disability, all the authorities agree. *Green* v. *Merriam*, 28 Vt. 801; *Spencer* v. *Hale*, 30 Vt. 314; *Graham* v. *Fisher & Roberts*, 30 Vt. 428; 2 Parsons Cont. 322, *et seq.* Do these facts show such a receipt and acceptance of the goods by the defendant, as is required by the statute to render the sale binding upon him? The decision of this question depends largely upon the light in which the railroad company is to be regarded. If it is to be regarded as the agent and servant of the plaintiffs, the goods have never been accepted or received by the defendant. But if it is to be regarded as the agent and servant of the defendant, the goods have been received by him, but whether accepted,

may depend upon other considerations. We think the railroad company must be regarded as the agent and servant of the defendant. He named it as the carrier to whom he desired the goods to be delivered. When the plaintiffs had delivered the goods to the railroad company, packed and marked to the defendant as he had directed, they had done all that was required of them to perfect the sale on their part. The goods had passed beyond their possession and control, save possibly the contingent right of stopping them while *in transitu.* The charges for conveying the goods to St. Albans were to be paid by the defendant. While conveying the goods from Albany to St. Albans, the railroad company was in the employ and service of the defendant. If the defendant had sent his hired servant with a team to the plaintiffs' store in Albany, with a verbal order for the goods in question, no one would doubt but a delivery of the goods to the servant, and the loading them upon his team, would be a receipt of the goods by the defendant. It has generally been held that the delivery of goods by the vendor to a common carrier named by the purchaser, is a delivery to the purchaser. 2 Parsons Cont. 328, 329, and notes ; *Spencer v. Hale,* 30 Vt. 314. Whether the mere act of naming the carrier by the purchaser to whom the goods are to be delivered, is more significant in determining whether the purchaser has received the goods within the meaning of the statute, than the fact that the carrier transports the goods at the expense of the purchaser, may be doubtful. Any fact, it would seem, which clearly indicates that the carrier holds the possession of and transports the goods as the property of the purchaser, shows a receipt of the goods by the purchaser.

We think it quite clear, both on authority and reason, that on the facts reported, the receipt of the goods by the railroad company was a receipt by the defendant, sufficient to remove the statute disability in that respect. We also think that the possession and control of the goods while being conveyed from Albany by the railroad company, must be regarded as the possession and control of the defendant, and that this was an acceptance of the goods by the defendant, within the meaning of the statute. He would had the right to have ended the possession and control of the rail-

road company at any time after they had received the goods, and to have assumed personal possession and control of the same. We think, when the purchaser assumes control of the goods either personally or through an agent, he accepts them sufficiently to remove the statute disability. No one, we think, would deny, that in the supposed case of the defendant's having sent his own teamster to the plaintiffs' store for the goods, the receipt and control of the goods by the teamster, would be such an acceptance by the defendant as would have removed the statute disability. Suppose the teamster, before the goods had come to the personal possession of the defendant, had destroyed or stolen them ; could the defendant have avoided paying the plaintiffs on the ground that he had not accepted them ? We think not, provided the goods were such as the defendant ordered. *Green* v. *Merriam,* 28 Vt. 801, is an authority for the doctrine that all that a purchaser need do to accept personal property sold by parol, so as to remove the statute disability, is, to assume control over the property. The sheep in controversy in that case, were never in the exclusive possession of the defendant. The parties separated the sheep from the rest of the plaintiff's flock, and while thus separated and in the plaintiff's possession, the defendant employed the plaintiff to keep the sheep for him a few days. It was held that the defendant had accepted and received the sheep, sufficiently to remove the statute disability. The facts reported as to the defendant's going and sending to St. Albans for the goods, established that the defendant understood the goods were his own. He went there to get his own goods, and not the goods of the plaintiffs. No doubt some confusion in the cases deciding what would or would not constitute an acceptance by the purchaser within the meaning of the statute, has arisen by not clearly distinguishing an acceptance by the purchaser that will remove the statute disability, from an acceptance that amounts to a waiver, at common law, by the purchaser, of his right to object to the goods because they do not answer to the order in quantity or quality. The latter does not arise till the purchaser has had a reasonable opportunity to examine the goods ; the former arises when he assumes control over them personally or by his agent. By accepting the

goods so as to remove the statute disability, the purchaser does not, necessarily, waive his common-law right to reject or return them because they fail to answer his order in quantity or quality. Whether he does waive this right or not, must depend upon whether he has had a reasonable opportunity to examine the goods. When the purchaser in any way assumes control over the goods, he sufficiently accepts them to answer the statute. If on examination made within a reasonable time, the goods fail to answer his order, the vendee can refuse to receive them, or return them, on the ground that they are not such goods as he ordered, but not on account of the disability cast upon the plaintiff by the Statute of. Frauds. If the vendee has assumed control over the goods as owner, and on examination they prove such in kind and quantity as he has verbally ordered, he cannot avoid his liability to pay for them on the ground that the contract is void by the statute. These views of the law as applicable to the facts reported by the auditor, reverse the *pro forma* judgment of the county court; and judgment is rendered on the report for the plaintiffs to recover the amount found due by the auditor.