BURLINGTON GROCERY CO. *v.* HOMER McGREGGS.

January Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 3, 1923.

*Statute of Frauds—Carrier Receiving Goods Has No Implied Authority to Accept Them for Buyer—Necessity of Both Receipt and Acceptance by Buyer—Effect of Receipt of Goods and Payment of Freight by Buyer's Truckman— Nature of Acceptance Requisite Under Statute of Frauds— Diligence Required in Election to Repudiate Delivery— Waiver of Defense of Statute—Meaning of "Waiver"— Acceptance Question for the Jury—Evidence Admissible to Show Non-acceptance—Seller Has Burden of Showing Acceptance—Sufficiency of Exception to Charge—Inadequate Briefing.*

1. A common carrier has no implied power to accept goods in behalf of the buyer, so as to take the contract of purchase out of the Statute of Frauds, by reason of having been designated by the buyer to receive and transport the goods to him.

2. Mere delivery of goods by the seller to a common carrier does not satisfy the Statute of Frauds, both a receipt and acceptance of the goods by the buyer or his authorized agent being necessary to render the sale binding.

3. That a truckman who had a general order to get any freight at the carrier's freight-house consigned to defendant, acted

thereon and took from the depot certain apples consigned to the defendant by plaintiff, and paid the freight thereon, and put them in buyer's cellar, was not evidence of acceptance by the defendant, so as to satisfy the Statute of Frauds.

4. Such an acceptance as will satisfy the statute must be some unequivocal act done on the part of the buyer with intent to take possession of the goods as his own.

5. The rule that a buyer, having an election to repudiate the delivery of goods, must make such election immediately in order to avoid an acceptance by acquiescence, means no more than that such election must be made with due diligence and within a reasonable time, without unnecessary delay, under all the circumstances of the case.

6. In seller's action for breach of an oral contract of purchase, evidence *held* not to show an intention by the defendant to waive his right to interpose the Statute of Frauds as defense.

7. A "waiver" is an intentional relinquishment of a known right, its essence being voluntary choice, not mere negligence.

8. In an action for breach of an oral contract of purchase, on the evidence, whether there was such an acceptance by the defendant as satisfied the statute, *held* for the jury.

9. In such a case, where the court ruled without objection that notice to seller's salesman was notice to the seller, evidence of *bona fide* efforts made by the buyer to get an interview with the salesman, of the notice of the buyer to such salesman when such interview was obtained that the goods would not be accepted but would be returned, of notice to the carrier by the buyer of his purpose to return the goods, and of his continuous attempts to do so until accomplished, *held* admissible to show buyer's intention not to accept the goods, and to rebut any inference otherwise to be drawn from the length of time the goods were in his possession, though seller was unaware of some of these circumstances.

10. In an action by seller for breach of an oral contract of purchase, on the issue of whether the buyer accepted the goods, and thus took the contract out of the Statute of Frauds, the seller has the burden of proving such acceptance.

11. Where the excepting party fails to call attention to any evidence relied upon in support of an exception to the charge as erroneous under the evidence, the exception will not be considered.

12. Where a brief contained nothing more on a point than the statement that "Judgment for plaintiff should have been rendered on the motion covered by exception 7. Exceptions, p. 8," with a reference to authorities, such briefing was inadequate.

ACTION OF CONTRACT to recover the purchase price of certain goods. Pleas, general denial and Statute of Frauds. Trial by jury at the September Term, 1921, Chittenden County, *Wilson,* J., presiding. The jury returned a special verdict finding an oral contract of sale as claimed by plaintiff, and a general verdict for the defendant on which judgment was entered for the defendant. The plaintiff excepted. The opinion states the case. *Affirmed.*

*Warren R. Austin* for the plaintiff.

Delivery to carrier by seller passed title to the buyer, subject only to stoppage in transitu and right of rescission by him if the goods failed to be in accordance with order. 24 R. C. L. 40; 23 R. C. L. 1243; *Murray* v. *Morris,* 91 Vt. at 544, 545, 102 Atl. 99; *Spencer* v. *Hale,* 30 Vt. 314; *Samuel Lawder & Sons* v. *Albert Mackie Grocery Co.,* 97 Md. 1, 54 Atl. 634, 62 L. R. A. 795.

Such delivery took the case out of the Statute of Frauds. *Spencer* v. *Hale, supra; Strong et al.* v. *Dodds,* 47 Vt. 348; *Adams* v. *Jones,* 83 Vt. 334; Note to 22 L. R. A. at 427.

Payment of freight by buyer's agent and receipt of the goods from the carrier were an acceptance of the goods. *Smith* v. *Fisher,* 59 Vt. 53, 57; *Edwards* v. *Brown,* 98 Me. 165, 56 Atl. 654; *Patterson & Holden* v. *Sargent et al.,* 83 Vt. 516; *Dennison* v. *Stoughton,* 55 Vt. 371; *Brown* v. *Nelson,* 66 Vt. 660.

*M. G. Leary* for the defendant.

Delivery to the carrier by the seller was not delivery to the buyer. *International Money Box Co.* v. *Southern Trust & D. Co.,* 93 App. Div. 309, 87 N. Y. S. 881; *Berlaiwsky* v. *Rosenthal,* 104 Me. 62; *American Bridge Co.* v. *Ducane Steel Foundry Co.,* 28 Pa. Super. Ct. 479; *Weil* v. *Stone,* 104 A. S. R. 243; *Jones* v. *Mechanics Bank,* 96 A. D. 533; *Johnson* v. *Cuttle,* 105 Mass. 447.

A common carrier selected to transport goods from the seller to the buyer has no implied power to accept goods for the buyer. *United Hardware Co.* v. *Blue,* 52 So. 364, 35 L. R. A. (N. S.) 1038 and notes; *Redington* v. *Roberts,* 25 Vt. 686; *Quintard* v. *Bacon,* 99 Mass. 185; *Jones* v. *Mechanics Bank,* 96 A. D. 533; *Speeding* v. *Griggs,* 196 Mich. 571, 574.

To take a case out of the Statute of Frauds, the buyer must both receive and accept the goods.    *Gibson* v. *Benjamin,* 45 Vt. 124; *Redington* v. *Roberts, supra; Patterson & Holden* v. *Sargent et al.,* 63 Vt. 516; *Kamensky* v. *Chapin,* 193 Mass. 500; *Quintard* v. *Bacon, supra; Remick* v. *Sanford,* 120 Mass. 309; *Knight* v. *Mann,* 118 Mass. 143.

WATSON, C. J.    The plaintiff seeks to recover the purchase price of 100 cases of canned apples which, through its salesman, Clarence L. Jeffrey, it claims to have sold to defendant at St. Albans, on July 28, 1920.    Defendant was the keeper of the depot restaurant at that place.    The plaintiff's only evidence of the terms of the contract of sale was that given by Jeffrey who testified to the conversation with defendant on the day named, which led up to the latter's ordering 100 cases of canned apples. Then being asked what was said about the price and time of shipment, answered, "They were to be shipped in the fall and my price was six dollars; I told him inasmuch as he was buying a hundred cases I would make the price \$5.75 f. o. b. Burlington, and he said 'All right.' "    The contract was wholly verbal, and no note or memorandum of the bargain was made in writing, nor anything given in earnest to bind the bargain, or in part payment.    The contract shown by plaintiff's evidence contained no provision as to how the apples should be shipped, nor by what instrument of transportation, nor by which party the instrumentality or carrier should be selected or designated.    Defendant denied any verbal agreement of purchase, and further claimed that in any event he neither received nor accepted the goods and, under Statute of Frauds, was not liable to pay for them.    His evidence tended to support his position in each of these respects. All parol evidence tending to show such a contract was objected to by him on the ground of the statute.    A trial was had by jury, resulting in a special finding that the oral agreement of sale was made as claimed by plaintiff, and a general verdict for the

defendant. Judgment was passed for defendant, to which exception was saved.

It appeared that without any previous notice to defendant the plaintiff shipped the apples from Burlington over the line of the Central Vermont Railway Company on November 12, 1920, and they arrived at St. Albans on November 15, and that on the next day a truckman, one McGrath, to whom the railway company was requested by defendant on July 8, 1920, to deliver any freight consigned to the latter, paid the freight, trucked the goods to defendant's cellar, and stored them there; that defendant came to the cellar while the last load was being put in, and then first learned that the apples had been shipped from the plaintiff; that on learning this defendant, asserting that he never ordered them, at once directed the truckman to stop unloading them, to reload those already unloaded, and take them all back to the freight-house, but the latter said he could not take them out of the cellar that night because the freight-house was closed; that defendant then told him to draw them back the first thing the next morning. Defendant's evidence tended to show that he did not receive any invoice of the apples before they were put into the cellar, and did not see an invoice until two or three days later; that he undertook to communicate with Jeffrey (who also lived in St. Albans) at his house by telephone that evening, but not then succeeding in getting him, called him the next morning by telephone, telling him to come right down as defendant wished to talk with him about these apples; and he said he would come, but he did not at that time; that in three or four days defendant telephoned Jeffrey again and the latter said he would be there, but he did not come for three or four days more, then he came; that defendant told him he never ordered those apples and would not keep them, further telling him to take them out of the cellar, and Jeffrey said he could not do anything about it; that after this interview defendant went to Burlington to see the plaintiff, to explain that he never ordered the apples and would not keep them; that the manager was away, so he left word with the head clerk, telling him that if they did not get the apples away defendant would ship them back; that they were shipped back December 23, 1920, the delay in so doing being due to the want of a warm car by the railroad company in which to ship them to prevent their freezing; at first defendant wanted to return the apples to the railroad company as refused

freight; but this was refused.    Then he offered them as a shipment to Burlington, and because of the severity of the weather was asked to hold them until there was a warm car from Burlington returned.

Plaintiff contends that its delivery of the goods to the common carrier for transportation to the defendant, passed the title to the latter, subject only to the right of stoppage in transitu and the right of rescission if the goods failed to be in accordance with the order, neither of which rights was exercised; that such delivery took the case out of the Statute of Frauds, and was sufficient, in view of the special verdict, to support this action for the purchase price.    But these propositions can not stand critical analysis as applied to the circumstances of this case.    If it be granted that at common law the effect of such delivery of the goods for that purpose would be to pass the title, yet to take the contract of sale, found by the special verdict, out of the Statute of Frauds there must have been a compliance with its requirements.

In support of its position touching the Statute of Frauds, the plaintiff makes reference to several reported decisions of this Court, two of which, *Spencer* v. *Hale,* 30 Vt. 314, 73 A. D. 309, and *Strong, Whitney & Co.* v. *Dodds,* 47 Vt. 348, require more than passing notice.    The Spencer Case, an action of book account, was to recover the price of a quantity of fence posts sold by the plaintiff to the defendant, and by the contract to be delivered by the plaintiff upon cars to be furnished by the defendant for that purpose at the depot at Shaftsbury.    They were so delivered on board cars so furnished; which by the station agent were forwarded by defendant's direction to his place of residence in New York.    The plaintiff had nothing to do with the conveyance, either in selecting the carrier or otherwise, and it did not appear that he knew to what particular place the posts were to be forwarded, or by what instrumentality. Before making the verbal purchase, the defendant saw the plaintiff's pile of posts, of which those in question were a part, examined them, and agreed to take of the lot shown him at least ten thousand at a price then agreed upon.    As to quality, the posts delivered were in compliance with the contract.    The Court states that nothing in the case shows that the parties contemplated a delivery or acceptance at any other place than Shaftsbury, and there is every reason to presume they did not; and that

later, being informed by the plaintiff of the time when the posts were forwarded, the defendant promised to send the money for the price, and gave no intimation of dissatisfaction for some ten days more, and never returned the posts. It was held that the delivery and acceptance were perfected at the time the posts were sent from the station at Shaftsbury. Thus it is seen that the holding of acceptance in that case was not based alone on an agency of the carrier inferred from the fact of its designation by the buyer, but on the facts of such designation and furnishing cars, together with his subsequent acts showing that at the place of shipment he assumed dominion over the property as his own, and through his agent for that purpose forwarded the same to the place of his residence in another state, subsequently promising to pay the purchase price, and never returning the property. We have occasion to notice this case again in a later paragraph.

[1] The other case mentioned above, *Strong, Whitney & Co.* v. *Dodds,* is one where (quoting from the opinion of the Court), "The facts reported by the auditor, in legal effect, are, that the defendant ordered the goods in question * * * * and directed the plaintiffs to deliver them, duly packed, to the railroad company, to be transported *via* Fairhaven to him at St. Albans. The plaintiffs selected and packed the goods, * * * and delivered them to the common carrier named, marked as directed, and advised the defendant thereof. * * * The goods never came to the personal control or acceptance of the defendant." After going to St. Alban's two or three times for them, and sending to inquire several times, and not finding them, defendant notified the plaintiffs that he should not receive the goods, as it was too late for the season. It was held that on the foregoing facts the receipt of the goods by the carrier was a receipt by the defendant, and that the possession and control of them by the carrier while being conveyed from the place of shipment must be regarded as the possession and control of the defendant, and that this was an acceptance of the goods by him, within the meaning of the Statute of Frauds. This is a square holding that when goods have been ordered from a distance, to be shipped to the buyer by a common carrier designated by him, the Statute of Frauds is satisfied by the delivery to the carrier, on the principle that the carrier, being by such designation the agent of the buyer to receive the goods, is also his agent to accept them. But in the respect named that case is in conflict with *Redington & Co.* v.

*Roberts,* 25 Vt. 686; where a similar question was raised regarding the powers of a teamster who had a general order from a mercantile firm in another town to receive and bring all goods found at the depot in St. Johnsbury, directed to them. It was held that the teamster's general authority to receive and transport all goods there found so directed, was not sufficient to warrant the exercise of a power (of acceptance), which changes the legal rights of parties to an unexecuted contract; as this would be virtually placing him in a position to make a contract for them, the Court saying, "Such a delegation of power was evidently not intended in this case, and is not within the general duties of a carrier." The holding in the Redington & Company Case is in keeping with the law as stated by the best elementary writers on the subject, and with that in the great majority of cases decided by the courts of last resort in this country. Thereon Mr. Williston says in his work on Sales, Sec. 89: "And, even though the carrier be specially named by the buyer, it is still true that though the carrier has authority to receive for the buyer, he has not authority to accept. The agency of the carrier is to receive and carry goods, not to decide whether they conform to the contract or offer. Accordingly it is generally agreed now that even though the carrier is particularly designated by the buyer, delivery of the goods to him does not satisfy the statute." Mr. Browne in his work on the Statute of Frauds (5th Ed.), Sec. 327b, says: "The doctrine that the carrier, when he has received the goods, must also be taken to have accepted them under authority from the buyer, and thereby to have established the contract" is no longer law; that so far as the receipt goes, he cannot complain, he himself having instructed the seller how to make the delivery and transfer the possession; "but in the absence of proof that the buyer has actually vested in the carrier the authority (which under ordinary circumstances he certainly would not have) to acknowledge that goods delivered under the contract are in conformity with its terms, no inference of such authority in the carrier can arise from the mere fact that the goods have been delivered to him." To the same effect are the cases: *Johnson* v. *Cuttle,* 105 Mass. 447, 7 A. R. 545; *Atherton* v. *Newall,* 123 Mass. 141, 25 A. R. 47; *Kemensky* v. *Chapin,* 193 Mass. 500, 79 N. E. 781, 9 Ann. Cas. 1168; *Rodgers* v. *Phillips,* 40 N. Y. 519; *Allard* v. *Greasert,* 61 N. Y. 1; *Jones* v. *Mechanics' Bank,* 29 Md. 287, 96 A. D. 533; *Smith* v. *Brennan,*

62 Mich. 349, 28 N. W. 892, 4 A. S. R. 867;*Fontaine* v. *Bush,* 40 Minn. 141, 41 N. W. 465, 12 A. S. R. 722; *Standard Wall Paper Co.* v. *Towns,* 72 N. H. 324, 56 Atl. 744. Without referring to more decisions or treatises on the subject, we think that, by the great weight of authority and upon principle, the holding had in *Strong, Whitney & Co.* v. *Dodds,* 47 Vt. 348, in effect that the common carrier had implied power of acceptance consequent on its having been designated by the buyer to receive and transport the goods to him, is unsound in law; and to the extent of such holding that case is deemed to be overruled.

[2-4] In the present case the carrier was selected by the seller, from whom no authority could be acquired except the mere delivery of the goods for transportation to the buyer. But such mere delivery was not enough to satisfy the Statute of Frauds. There must be a receipt and acceptance of the goods by the latter, to render the sale binding. *Gibbs* v. *Benjamin,* 45 Vt. 124; *Gorham* v. *Fisher,* 30 Vt. 428; *Patterson* v. *Sargent,* 83 Vt. 516, 77 Atl. 338, 138 A. S. R. 1102. And to be binding upon the latter, such receipt and acceptance must be by him personally or by his authorized agent. *Atherton* v. *Newall, supra.* The plaintiff strenuously argues, however, that these requirements were certainly fully met when, at St. Albans, the freight was paid to, and the goods taken from, the carrier, by the agent of defendant, by which the latter took complete control of the goods. Touching this position, defendant's evidence tended to show that some two or three weeks before the time when these goods were taken from the carrier by the truckman, the defendant was expecting the arrival of some New York state canned apples which, several months earlier, he had ordered from another concern, and spoke to the truckman about taking them to defendant's cellar, giving him a general order to get any freight at the freight-house consigned to defendant; but that he never ordered the truckman to pay the freight on, nor to get, the particular apples in suit. We may assume that this general order was sufficient to justify the truckman in receiving of the carrier the apples in question, they being consigned to defendant, and in paying the freight indispensable to getting them, and further assume, though we do not decide, that this constituted in law a receipt of the property by defendant, yet this is not enough. The statute requires an *acceptance,* which covers more than *receipt. Patterson & Holden* v. *Sargent,* 83 Vt. 516, 77 Atl. 338,

138 A. S. R. 1102.   An acceptance to satisfy the statute must be by some unequivocal act done on the part of the buyer with intent to take possession of the goods as his own.   There must be a perfected sale shown, not by proof or a change of possession merely, but of such a change with such intent.   *Remick* v. *Sandford,* 120 Mass. 309; *Ford* v. *Howgate,* 106 Me. 517, 76 Atl. 939, 29 L. R. A. (N. S.) 734; *Jarrell* v. *Young, etc., Co.,* 105 Md. 280, 66 Atl. 50, 23 L. R. A. (N. S.) 367, 12 Ann. Cas. 1; *Bassett* v. *Camp,* 54 Vt. 232.   And what the truckman did under his general order in getting the goods from the carrier, including the payment of freight, and putting them in the cellar, was not evidence of acceptance by defendant.   *Standard Wall Paper Co.* v. *Towns, supra; Bacon* v. *Eccles,* 43 Wis. 227; *Jarrell* v. *Young, etc., Co., supra.*

[5]   It is said in plaintiff's brief that the receipt by defendant of the goods in his cellar and the keeping of them there for the length of time shown by the evidence without repudiation, "on a declining market, was a waiver of the right to repudiate and an acquiescence in its (their) delivery amounting to acceptance."   In support of this proposition reference is made to the case of *Spencer* v. *Hale,* 30 Vt. 314, 73 A. D. 309.   There it is said all the cases agree that where the purchaser "has an election to repudiate the delivery, he must do it immediately, or he is bound by the acquiescence as an acceptance."   Relying on this principle of law, the plaintiff in the instant case says the defendant did not exercise such right of repudiation "immediately," and so his acquiescence amounted to an acceptance. It is important therefore to notice the proper signification of the word "immediately," as used in the foregoing doctrine.   Webster gives this word two meanings:   *a.* Without intermediary; in direct connection or relation; in a way to concern or affect directly or closely; proximately, directly, closely.   *b.* Without interval of time; without delay; straightway; instantly; at once.   Webster's Int. Dictionary.   Apparently adopting meaning *a.* this Court has held that the word "forthwith," used in a fire insurance policy as designating the time of giving notice of loss by fire, means that it must be given "with due diligence and within a reasonable time, without unnecessary delay, under all the circumstances of the case."   *Donahue* v. *Insurance Co.,* 56 Vt. 374.   It has sometimes been said that "forthwith" has the same meaning as "immediately."   *Bur-*

*gess* v. *Boetefeur,* 7 M. & G. 493. In 4 Comyn's Digest, 671, Note (*b*), it is said "that the word 'immediately' has great latitude, has not any determinate signification, and is frequently used to import as soon as conveniently could be done." To the same effect is *Howell* v. *Gaddis,* 31 N. J. Law, 313. In *McLure* v. *Colclough,* 17 Ala. 89, 100, it is said to be a word of relative signification and is never employed to designate an exact portion of time; but is used with more or less latitude according to the subject to which it is applied; and in *Ward* v. *Maryland Casualty Co.,* 71 N. H. 262, 51 Atl. 900, 93 A. S. R. 514, it is, like similar words, used with less strictness than the literal sense requires. We think the proper and intended signification of the word as used in the doctrine stated in *Spencer* v. *Hale, supra,* is that the buyer's election to repudiate the delivery must be with due diligence and within a reasonable time, without unnecessary delay, under all the circumstances of the case. This holding follows that in *Donahue* v. *Insurance Co., supra.* Many other cases might be cited to the same effect.

[6, 7] The case is entirely barren of anything indicating an intention by the defendant to waive his right to interpose the statute as a defense. A "waiver" is an intentional relinquishment of a known right, and the essence of it is voluntary choice, not mere negligence. *Barber* v. *Vinton,* 82 Vt. 327, 73 Atl. 881. Nor did the declining market, if such there was as claimed by the plaintiff, at all affect the rights of defendant in his defense.

[8] As the case stood in the court below, the real vital question was, whether there was such an acceptance by defendant as satisfied the statute, and on the evidence it was for the jury to determine. In *Garfield* v. *Paris,* 96 U. S. 557, 24 L. ed. 821, the Supreme Court of the United States, speaking through Mr. Justice Clifford, said: " 'Accept and receive' are the words of the statute in question; but the law is well settled, that an acceptance sufficient to satisfy the statute may be constructive, the rule being that the question is for the jury whether the circumstances proved, of acting or forbearing to act, do or do not amount to an acceptance within the statute. * * * Questions of the kind are undoubtedly for the jury; and it is well settled that any acts of the parties indicative of ownership by the vendee may be given in evidence to show the receipt and acceptance of the goods to take the case out of the statute of frauds. Conduct, acts, and declarations of the purchaser may be given in evidence for that

purpose." *Hinchman* v. *Lincoln*, 124 U. S. 38, 31 L. ed. 237, 8 Sup. Ct. 369, is a strong case along the same line. On these questions circumstances of slight probative force, if more than a mere scintilla, may properly be put in evidence. Browne, St. Frauds (5th Ed.), Sec. 321. But the effect of the acts relied on to show actual receipt or acceptance may be much qualified by the circumstances under which they were done. Section 326.

[9] It is urged that any attempt by defendant at rescission of the contract through the salesman was futile because he had no authority to rescind the sale after it was made. The court ruled without objection being made that notice to the salesman was notice to the plaintiff company. And *bona fide* attempts by defendant right away on learning that the apples came from the plaintiff, and subsequent thereto, to get an interview concerning them with the salesman, and his interview with him from six to eight days later in which he was notified that defendant would not accept the apples and was going to return them to plaintiff, the notice to the carrier by defendant of his purpose to return the goods and his continuous attempts to do so until accomplished, were all circumstances tending to show defendant's intention not to accept the goods, and were material and competent to rebut any inference of acceptance which might otherwise be drawn from the length of time they were in his possession; and the fact that some of these circumstances were unknown to the plaintiff did not affect their admissibility for the purpose named. *Caulkins* v. *Hellman*, 47 N. Y. 449, 7 A. R. 461.

[10] By the charge the jury were instructed in effect that, there being at least a week after the goods were received by defendant before he gave notice to the plaintiff or its agent of his non-acceptance of them or of his repudiation of the sale contract, he did not, as matter of law, give the immediate notice required by the statute to relieve himself of liability. The court then proceeded to submit the question whether the defendant, by reason of anything done or said by Jeffrey at the time of defendant's telephonic conversations with him, had a reasonable excuse for delaying to give such notice, further charging that he must have a valid reasonable excuse for not giving it immediately, or else the law will hold him to the fulfillment of his oral contract; "in other words," said the court, "whatever may have been his actual intent he is deemed to have accepted the

goods under the circumstances here shown, since he did not immediately exercise his right of repudiation and so notify the plaintiff, unless he is excused from such immediate repudiation by something the evidence shows Jeffrey said or did.'' By the charge the burden of proof was placed on the plaintiff to make out and establish every essential element in the case. The plaintiff excepted to the failure of the court to charge that the burden of proof to show excuse was on defendant. This exception is not well founded. The question of defendant's acceptance was wholly for the jury, and it involved not only the circumstances of his acts, doings, and intent, but also the circumstance of time which elapsed before his election of non-acceptance was made known to the plaintiff or its agent. While it is difficult to see how the course of procedure had in this respect consists with the requirements of the case, no exception was saved, and it was the way taken by the court to submit the question of acceptance, as to which question it devolved on the plaintiff to make out its case.

[11] The court charged that the happenings subsequent to the time when the defendant actually gave notice that he would not accept the goods were such that the jury might disregard them, except as they bear upon what occurred earlier. Exception was saved to this part of the charge, on the ground that the evidence tends to show such neglect by the defendant during the time subsequent as might show acquiescence even then, and an acceptance by such acquiescence. But our attention is not called to any evidence on which plaintiff relies in support of this contention. The exception is not considered.

[12] Lastly plaintiff's brief says, ''Judgment for plaintiff should have been rendered on the motion covered by exception 7. Exceptions p. 8.'' Reference is made to authorities. Nothing more is contained in the brief on this point. We have several times held that such briefing is not adequate within the meaning of the rule.

*Judgment affirmed.*

NOTE:—MILES, J., having retired from the Bench took no part in the decision of the case.