THE MECHANICAL BOILER CLEANER COMPANY v. WILLIAM H. KELLNER ET AL.

*Argued November 12, 1897 ; re-argued June Term, 1898—Decided November 7, 1898.*

1. The plaintiffs were manufacturers of a mechanical boiler-cleaning appliance, a patented article, *designed to be attached to boilers for the* purpose of cleaning them. They contracted by parol with the defendants to furnish two of these appliances at the price of $150 each. The appliances were affixed to the defendants' boilers, on trial, upon terms that the sale was to be absolute upon certain conditions, either that they were to accomplish a certain purpose or that the defendants were at liberty to take the appliances or not as they saw fit. Defendants subsequently refused to complete the purchase. In an action for the price—*Held*—
   1. That the transaction was a contract for the sale of goods, wares and merchandise, within the sixth section of the statute of frauds (*Gen. Stat., p.* 1603), and
   2. That affixing the appliances to the defendants' boilers, with their consent, to test their capacity, was not such a delivery and acceptance as would validate the contract under the statute, although on the test it appeared that the articles were entirely satisfactory.
2. The statute of frauds applies as well to an agreement for the manufacture and delivery of an article to be made in the course of the general business in which the vendor is engaged as to a contract for the sale of a chattel finished and on hand.

3. Consequently, where an order is given to a manufacturer for an article not at the time *in solido*, but which is to be manufactured by the vendor in the general course of his business, the transaction is in substance and effect a contract of sale within the statute, and not an agreement for work and labor and materials.

4. Where the contract is sought to be validated on the ground of the acceptance and actual receipt of part of the goods by the vendee, the buyer must accept and actually receive part of the goods, and the contract will not be good unless he does both.

5. Whether the buyer's refusal to take the goods be reasonable or not is immaterial. The question is not whether he ought to accept, but whether he has accepted them.

6. Placing the property in charge of the vendee, with his consent, for the purpose of testing it, with a view to enable him to decide whether or not he would buy, is not such an acceptance as will comply with the statute, nor will an expression of satisfaction with the result of the experiment by the vendee after the trial amount to an acceptance. Testimony to that effect would show that the purchaser approved of the quality of the goods, but is inadequate to prove an acceptance by him.

7. To satisfy the statute there must be a delivery of part of the goods by the vendor, with the intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter, with the intention of taking possession of them as owner, evinced by some act or conduct which would be justified if he was owner and not otherwise.

On rule to show cause.

Before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the plaintiff, *Leon Abbett.*

For the defendants, *Frederick F. Guild.*

The opinion of the court was delivered by

DEPUE, J. This action was brought to recover the price of two mechanical boiler-cleaning appliances—$150 each. At the Circuit a verdict was rendered for the plaintiff for the price, on which a rule to show cause was granted. On the hearing of the rule the court directed a re-argument on two

questions : First, whether the transaction was a contract of sale within the statute of frauds, and second, whether there had been any acceptance of the appliances by the defendants in compliance with the statute.

These appliances are a patented article manufactured by the plaintiff and designed to be attached to boilers for the purpose of cleaning them. The attachment to a boiler is comparatively inexpensive, and the appliances can be readily detached and laid aside. The contract for the purchase was negotiated between Randolph, the agent of the plaintiff, and Martin, who was the agent of the defendants. The proof in the case was that they were attached when the boilers were not in use. One was attached on Sunday in the latter part of October and the other on the succeeding Sunday.

The evidence touching the contract under which these appliances were attached to the defendants' boilers is conflicting. The plaintiff's agent, by whom the arrangement was made, testified that he was a canvasser for the Mechanical Boiler Cleaner Company, and that he went to the defendants' place of business in the city of Newark, to find out who had charge of the steam power in that concern, and that he was referred to Mr. Martin ; that he was there a number of times, and there were always excuses on Mr. Martin's part, saying he was not quite ready to have the cleaners put in ; he was going to make some alterations, and that he had put him off from time to time, and finally Mr. Martin took him and introduced him to Mr. Pangborn, the chief engineer. Pangborn seemed to think very favorably of it and said he would tell Mr. Martin about it; that he went a day or two after that to see Mr. Martin, but Martin was too busy to talk with him and told him to come again ; that he went there the next day or the second day after and saw Martin, "and he told me to put on the appliances on each of the two boilers;" that at that time he, the agent, filled out one of the company's regular orders for these appliances and handed it to Mr. Martin to sign, and Mr. Martin read it over and said he would not sign

anything, " but if we put in the appliances and they did what we claimed for them we would get our money;" that he agreed to give them a month's trial; that the price they were to receive for the appliances was $150 each. He further testified that he said to Martin that he, the agent, wanted to put those appliances in on trial, " and I told him what we had done, and that if it failed and we did not do what we claimed, that the appliances would not cost him anything;" that Martin said, " if they done what we claimed they would we would get our money for them. He declined to sign the order, but said that if I done what we claimed we could do with the machines, we would get our money." The witness further testified that after the experiment had been made he saw Mr. Martin again, and that he asked him for a settlement, and Martin said, " ' that's the settlement, we have decided not to keep the appliance.' That is the only information I got." The cleaners were put in in the latter part of October or the first part of November, 1896, and they were tested on the 29th of December.

Martin, the agent of the defendants, testified that Randolph came to the defendants' store to effect a sale of these cleaners several times. He testified to the arrangement by which the plaintiff was allowed to attach its cleaners in these words: " I said, ' you might put one in on trial, but I won't promise you to keep it.' And he (Randolph) said, ' we can put it in on trial; it don't make any difference; we will put it on trial; you don't have to keep' it.' And Randolph then said, ' here is an order to sign.' And I said, ' Oh no, not on your life; if that cleaner does what you claim it does, and we conclude to keep it, all right, but I won't give you $150 for it.' There was nothing said about the cleaner being satisfactory, but that it was put in with the understanding that if we wanted it we would keep it." Scoville, the secretary of the company, testified that when he called on Martin to get pay for the cleaners, to the question whether Mr. Martin gave any reason for saying that they didn't want them, or gave any reason why they

didn't want them, answered, "he simply said that they had decided not to keep them; he gave no reason that they had any fault to find, that the cleaners did not work. I think he said that they had decided not to use well-water and would not want the cleaners."

The evidence further shows that subsequently the cleaners were detached, about the middle of January, after notice to the plaintiff that the defendants were not going to keep the appliances and that they should take them out, giving them a certain day to come and take them out, and notifying them that if they did not come and take them out, then " we would take them out ourselves and charge them."

The plaintiff's counsel contends that this transaction was not a contract of sale within the statute of frauds, and that recovery may be had for the work and labor and materials.

The contract in question was an executory and not an executed contract of sale. It is undisputed that the property in the goods did not vest in the defendants upon the delivery. The appliances were affixed to the defendants' boilers on trial, upon terms that the sale was to be absolute upon certain conditions, either that they were to accomplish a certain purpose or that the defendants were at liberty to take the appliances or not, even if the appliances did accomplish all that was represented. A contract of this character is an executory contract of sale. *Smith* v. *York Manufacturing Co.*, 29 *Vroom* 242.

The sixth section of the statute of frauds invalidates every contract for the sale of goods, wares and merchandise for the price of $30 or upwards, unless, *first*, a note or memoranda of such contract be made in writing and signed by the party to be charged thereby or by his agent thereunto lawfully authorized; or, *second*, unless the buyer shall accept part of the goods so sold and actually receive the same; or, *third*, unless the buyer shall give something in earnest to bind the bargain or pay some part of the purchase-money. *Gen. Stat., p.* 1603. The statute applies to executory as well as to executed contracts. In Towers v. Osborne the defendant had " bespoke a chariot,

and when it was made refused to take it." In an action for the value, Chief Justice Pratt ruled this not to be a case within the statute of frauds, which related only to contracts for the actual sale of goods, where the buyer is immediately answerable without time given him by special agreement, and the seller is to deliver the goods immediately. The result of this decision was that executory contracts for goods were not considered within the statute of frauds. 1 *Str.* 506. Towers *v.* Osborne was overruled in Rondeau *v.* Wyatt, and it was there decided that the statute did apply to executory contracts. Lord Loughborough, in delivering the opinion of the court, said: "It is singular that an idea could ever prevail that this section of the statute was only applicable to cases where the bargain was immediate, for it seems plain from the words made use of that it was meant to regulate executory as well as other contracts. The words are, ' no contract for the sale of any goods,' &c. ; and it seems that this provision of the statute would not be of much use unless it were to extend to executory contracts, for it is from bargains to be completed at a future period that the uncertainty and confusion will probably arise which the statute was designed to prevent." 2 *H. Bl.* 63, 67. Ever since the latter decision it has been considered as settled law, both in the English and in the American courts, that the statute applies as well to executory as to executed contracts of sale. *Carman* v. *Smick*, 3 *Gr.* 252 ; *Finney* v. *Apgar*, 2 *Vroom* 266 ; 8 *Am. & Eng. Encyl. L.* 704.

In applying the statute a distinction is made between a contract for the sale of goods already manufactured and a contract for mere work and labor and materials. That the former is within the statute is universally admitted. It is also conceded that contracts which are essentially contracts for work and labor and materials are not within the statute. With respect to the latter class, distinctions have been made which have operated to fritter away the benefits of the statute; for instance, where articles are ordered from a manufacturer and work is to be done upon them to fit them for delivery in compliance with the contract. In some cases such a transaction

is regarded as a contract for the sale of goods within the mean-
ing of the statute, and in other cases a contract for labor and
materials.    The subject was discussed by Chief Justice Beas-
ley in *Finney* v. *Apgar*, 2 *Vroom* 266.   The learned Chief
Justice, on page 270 of the report, says : " From a careful ex-
amination of the English and American authorities and the
principles illustrated by them, I think the following general
rules may be deduced, viz. : First, that a contract for the sale
of goods which is purely executory is as much within the
statute as is one to be executed *in presenti;* second, that
where a contract is made for an article not existing at the time
*in solido*—to use the expression of the old cases—and when
such an article is to be made according to order and as a thing
*distinguished from the general business of the maker*, then such
contract is in substance and effect not a sale, but for work
and materials."

In Pawelski *v.* Hargreaves, the facts were these : The de-
fendants, who were about to enter the brewing business,
applied to the plaintiffs, who were wagon manufacturers, to
build three trucks.   The plaintiffs were too busy to undertake
to make them, but agreed to furnish them from the Milburn
Wagon Company's works, at Toledo, Ohio, with whom they
had dealings.   The order was given ; the trucks when finished
were shipped to the plaintiffs' factory, and some slight alter-
ations were made by the plaintiffs at the defendants' request
in painting and lettering the trucks for the defendants' use.
The defendants refused to take the trucks.   The plaintiffs
paid the Milburn Wagon Company the published price for
them and brought suit.   At the trial the defence was the
statute of frauds.   The Court of Errors and Appeals held
that the contract was within the statute of frauds and sus-
tained the defence.   Mr. Justice Scudder, in delivering the
opinion of the court, said : " The attempt to draw the facts
of this case into the disputed realm of what are sales within
the statute and what are contracts for work and labor with-
out the statute, which has been so well discussed in the case
of *Finney* v. *Apgar*, 2 *Vroom* 266, is not satisfactory.   The

trucks were existing at the time of the contract, *in solido*, and were not to be made according to order; nor as things distinguished from the general business of the plaintiff, for they were in the direct line of their business, and with that knowledge the defendants sought them to obtain the trucks. Whether these articles which were needed were standing in the salesroom of the plaintiffs, ready for delivery with slight alterations and adaptations, or whether they were in the salesroom of a business correspondent in a distant city, who was ready to sell and forward the goods to them on their credit, without knowing or caring who their customer might be, can make but little difference. The result would, in either case, be that by the intention of the parties there would be a transfer, for a price, from the plaintiffs to the defendants, of chattels in which the defendants had no previous property; and according to the rule as formulated by Mr. Benjamin in his book on Sales (*Corbin's ed., vol. 1., p.* 121), this would be a contract for the sale of a chattel within the statute of frauds." 18 *Vroom* 334, 337.

In the opinion of Mr. Justice Scudder in the case last cited he refers to two conditions—*first*, where the chattel sold is *in solido*, and, *secondly*, where it is not distinguished from the general business in which the vendor is engaged. On principle the statute of frauds applies to a contract in either of these aspects, both to an agreement for the sale of a chattel on hand and for sale and to an agreement for the manufacture of an article to be made in the course of the general business in which the vendor is engaged. Such plainly is the view entertained by Chief Justice Beasley as expressed in Finney *v.* Apgar. In either case if the article is delivered and accepted the action would be on a contract of sale and not upon an agreement for work and labor and materials.

The Chief Justice, in Finney *v.* Apgar, in defining the transactions that were not within the statute, but were contracts for work and labor and materials, comprises within the latter a contract for an article not existing at the time, when such an article is to be made to order and as a thing distin-

guished from the general business of the maker. He cites with approbation *Garbutt* v. *Watson*, 5 *Barn. & Ald.* 613, and *Smith* v. *Surman*, 9 *Barn. & C.* 561. In the first of these cases there was a verbal contract by the plaintiffs, who were millers, for the sale of a quantity of flour which at the time was not prepared and in a state capable of immediate delivery, and it was held that this was a contract for the sale of goods within the statute. In deciding the case, Chief Justice Abbott said : " The plaintiffs were proceeding to grind the flour for the purpose of general sale, and sold this quantity to the defendant as part of their general stock." Mr. Justice Bayley said : " This was substantially a contract for the sale of flour, and it seems to me immaterial whether the flour was at the time ground or not. The question is whether this was a contract for goods or for work and labor and materials found. I think it was the former, and if so it falls within the statute of frauds." In Smith *v.* Surman, A, being the owner of trees growing on his land, verbally agreed with B, while they were standing, to sell the timber at so much per foot. It was held that this was a contract for the sale of goods within the statute. In delivering the opinion of the court, Mr. Justice Bayley said : " The true construction of the bargain is that it is a contract for the future sale of the timber, when it should be in a state fit for delivery. *The vendor, so long as he was felling it and preparing it for delivery, was doing work for himself and not for the defendant.*" Mr. Justice Littledale said : " Where the contracting parties contemplate a sale of goods, although the subject-matter at the time of making the contract does not exist in goods, but is to be converted into that state by the seller bestowing work and labor on his own raw materials, that is a case within the statute. *It is sufficient if at the time of the completion of the contract the subject-matter be goods, wares and merchandise.* I cannot assent to any case which has decided that such a contract is not within the statute." Mr. Justice Parke said : " In *Groves* v. *Buck*, 3 *Mau. & S.* 178, it was said that that section did not apply to a sale of goods which at the time of the contract were not

capable of delivery and part acceptance, but that case was overruled by Garbutt *v.* Watson. It was there held that a contract by millers for the sale of a quantity of flour, which at the time of the contract was not prepared and in a state capable of immediate delivery, was substantially a contract for the sale of flour, and not a contract for work and labor and materials found and provided. *The true question in such cases is as to whether the contract be substantially a contract for the sale of goods or for work and labor and materials found.*" These cases, which were cited by the Chief Justice, clearly express the converse of the principle which he adopted, as distinguishing contracts for future delivery where the transaction was for work and labor and materials. They indicate, as do the observations of the Chief Justice, the principle that where a contract is for goods to be manufactured and they are such as come within the general business of the maker, there the contract in substance and effect is a contract of sale within the statute. *Atkinson* v. *Bell*, 8 *Barn. & C.* 277, is a decision in the line of the cases above cited. An order in that case was given by the defendant to a patentee of certain spinning machinery for some spinning frames to be made for him. After the machines had been completed the defendant ordered them to be altered; they were afterwards completed according to the new order and packed in boxes for the defendant, but he refused to accept them. It was held that an action for goods bargained and sold or for work and labor and materials would not lie. Mr. Justice Bayley, delivering the opinion, said: "If you employ another to work up his own materials in making a chattel, then he may appropriate the produce of that labor and materials to any other person. No right to maintain any action vests in him during the progress of the work; but when the chattel has assumed the character bargained for, and the employer has accepted it, the party employed may maintain an action for goods sold and delivered; or if the employer refuses to accept, a special action on the case for such refusal. *But he cannot maintain an action for*

*work and labor, because his labor was bestowed on his own materials and for himself, and not for the person who employed him."*

Atkinson *v.* Bell has been regarded as a ruling case in the English courts. The concluding passage in the opinion of Mr. Justice Bayley has been criticised. Mr. Benjamin says: "It is no doubt too broadly expressed; for, although generally, it is not universally the case that an action for work and labor will not lie when performed on materials that are the property of the workman." 1 *Benj. Sales (Corbin's ed.)*, § 99. In other respects the opinion of Mr. Justice Bayley has been adopted in the English courts. Cases of which *Clay* v. *Yates, 1 Hurlst. & N.* 73; *Grafton* v. *Armitage, 2 Com. B.* 336, and *Lee* v. *Griffin,* 1 *B. & S.* 272, are types, are readily distinguishable from contracts of sale. The first two are obviously the cases Mr. Benjamin had in mind in his criticism of the opinion of Mr. Justice Bayley, in Atkinson *v.* Bell. In Clay *v.* Yates the defendant contracted with the plaintiff, a printer, to print for him a second edition of a work of which he was the author. The plaintiff found the materials, including the paper. Although the work and labor in that instance was bestowed on materials furnished by the plaintiff, the contract was held by the court not to be a contract for the sale of goods. Baron Martin, in delivering his opinion, said: "The defendant intends that the printer shall use his types and that he shall set them up by putting them in a frame; that he shall print the work on paper, and that the paper shall be submitted to the author; that the author shall correct it and send it back to the printer, and then the latter shall exercise labor again, and make it into a perfect and complete thing in the shape of a book. I think the plaintiff was employed to do work and labor and supply materials for it, and he is to be paid for it, and it really seems to me that the true criterion is this: Supposing there was no contract as to payment, and the plaintiff had brought an action and sought to recover the value of that which he had deliverd, would that be the value of the book as a book? I apprehend not, for the book might not be worth half the value of the paper it was written on.  *   *   *

Therefore, this is a case of work and labor and materials done and provided by the printer for the defendant." In Grafton *v.* Armitage, the defendant was the inventor of a life buoy, in the construction of which curved metal tubes were used. He employed the plaintiff to devise some plan for a machine to curve tubes. The plaintiff made drawings and experiments, and ultimately produced a drum or mandrel which effected the object required. The plaintiff's action was in debt for work, labor and materials and for money due on accounts stated. The defendant insisted, on the authority of Atkinson *v.* Bell, that the action should have been for not accepting the goods, and not debt for work and labor, &c., citing the *dictum* at the close of Mr. Justice Bayley's opinion. Chief Justice Tindal pointed out as the distinction that in Atkinson *v.* Bell, "The substance of the contract was goods to be sold and delivered by the one party to the other. Here, however, there never was any intention to make anything that could properly become the subject of an action for goods sold and delivered. The plaintiff was applied to to point out the proper mode of attaining a given object, and he brings his action for the work and labor done by him and the materials used in the performance of that which he undertook to do." Mr. Justice Coltman said: "If this had been a contract by the plaintiff to make a machine for the defendant, the proper remedy would have been by an action for goods sold and delivered, or an action for not accepting the machine. But here it appears that the plaintiff was merely employed to use his skill in devising a mode of carrying out the defendant's invention."

There is some difficulty in adjusting the rule laid down, or rather its application, in Lee *v.* Griffin with the decision in Clay *v.* Yates. In Lee *v.* Griffin, the action was against the defendant as executor of Frances P., deceased, for goods sold and delivered and for work and labor provided by the plaintiff as a dentist for the deceased. It was proved at the trial that the plaintiff had, in pursuance of an order from the deceased, prepared a model of her mouth and made two sets of

artificial teeth. Before they were delivered the deceased died. The plaintiff's counsel contended that on the authority of Clay *v.* Yates, the plaintiff could recover in an action on the count for work and labor and materials. The judge directed a verdict for the amount claimed, with leave for the defendant to move to enter a nonsuit or a verdict for him. It was held by the court *in banc* that the contract was a contract of sale within the statute, and that an action for work and labor done and materials could not be maintained. Clay *v.* Yates was approved, and the result turned on distinguishing the case in hand from the decision in that case. Mr. Justice Crompton said: "The distinction between these two causes of action [that is, for work and labor and for goods sold and delivered] is sometimes very fine, but where the contract is for a chattel to be made and delivered it clearly is a contract for the sale of goods. There are some cases in which the supply of the materials is ancillary to the contract, as in the case of a printer supplying the paper on which a book is printed. * * * Clay *v.* Yates turned on its own peculiar circumstances. I entertain some doubt as to the correctness of that decision, but I certainly do not agree to the proposition that the value of the skill and labor as compared to that of the material supplied, is a criterion by which to decide whether the contract be for work and labor or for the sale of a chattel." Mr. Justice Blackburn said: "If the contract be such that when carried out it would result in the sale of a chattel the party cannot sue for work and labor, but if the result of the contract is that the party has done work and labor which ends in nothing that can become the subject of a sale, the party cannot sue for goods sold and delivered. The case of an attorney employed to prepare a deed is an illustration of this latter proposition. It cannot be said that the paper and ink he uses in the preparation of the deed are goods sold and delivered. The case of a printer printing a book would most probably fall within the same category." The learned judge puts his decision in that case on the theory that the contract was to deliver a thing which when completed would have resulted in

the sale of a chattel; in other words, that the substance of the contract was for goods sold and delivered.    Lee *v.* Griffin was disapproved by Chief Justice Beasley in Finney *v.* Apgar— in the decision of which he says that the doctrine of the earlier cases had been pushed to an excessive length, and he adds that the true doctrine is that "where the work and labor is the substantial object contracted for, although such work and labor is to be expended on the materials of the party who is to furnish the article at a given price, such contract is not for a sale, and consequently is not within the statute."    As applied to the facts appearing in Lee *v.* Griffin, we think this principle is the correct exposition of the statute.    The work done by the dentist was, it is true, done upon his own materials.    The model with respect to which the work was done was obtained from a cast from the lady's mouth.    The work when done was suitable only to the lady's mouth.    When it was completed the dentist could not (to quote the language of Mr. Justice Bayley in Atkinson *v.* Bell) "appropriate the produce of his labor and materials to any other person."    The facts in that case can be distinguished from the facts on which Clay *v.* Yates was decided only by a refinement of construction.

The English, Massachusetts and New York rules on this subject are stated by Commissioner Dwight in *Cooke* v. *Millard,* 65 *N. Y.* 352.

It would be useless to attempt to reconcile the American cases on this subject.    It is sufficient to say that the transaction in this case was clearly a contract of sale within the English rule, and within the rule adopted in this state as deduced from Finney *v.* Apgar and Pawelski *v.* Hargreaves. The thing contracted for was a patented article, in the manufacture of which the plaintiff was engaged, and it must be inferred from the testimony that the machines attached were either part of the stock of the plaintiff on hand at the time, or were to be manufactured by the plaintiff in the regular course of its business.    A suit for work and labor and materials would be wholly inapplicable to a recovery under these circumstances.    The pleadings, also, are framed on the theory of a contract of sale.

Martin, the agent of the defendants, refused to sign a written order; the contract was *en parole.* No payment was made on account. The case, therefore, must turn upon the question whether there was an acceptance of the goods and an actual receipt of them within the meaning of the statute. Counsel at the trial did not present the statute of frauds as applicable to this case, and the learned judge in his charge to the jury instructed them that if they found there was a sale of these goods, a conditional sale, and the evidence satisfied them that the condition was performed, so that the sale became an absolute sale, then the plaintiff was entitled to recover. This instruction was aside from the effect of the statute of frauds. The issue presented under that statute would involve, also, the important question whether the goods were accepted and actually received by the defendants within the meaning of the statute.

The question as to what is an acceptance and actual receipt of goods within the purview of the statute is one on which the decisions are at variance. These propositions may be considered as settled by the great weight of authority in England, as well as in the courts of this country, and the doctrines embraced in them accord with the reasons which gave rise to this important statute. First, the statute is not complied with unless two things concur—the buyer must accept and actually receive part of the goods and the contract will not be good unless he does both. Second, there may be an actual receipt without acceptance and an acceptance without a receipt—an acceptance to be inferred from the assent of the buyer, meant by him to be final, that the goods are to be taken by him as his property under the contract. Third, it is immaterial whether the buyer's refusal to take the goods be reasonable or not. If he refuses the goods, assigning grounds false or frivolous or assigning no reasons at all, it is clear that he does not accept the goods. The question is not whether he ought to accept, but whether he has accepted them. Fourth, the question of acceptance or not is a question as to what was the intention of the buyer as signified by his outward acts. These

propositions are abstracted from *Blackburn on Sales, pp.* 22 and 23, and adopted by Mr. Benjamin in 1 *Benj. Sales (Corbin's ed.*), § 139.    Another proposition that is vouched for upon principle and by the weight of authority is that possession of itself is not evidence of an acceptance, and that a compliance with the statute would require an acceptance by the vendee as owner.    In *Phillips* v. *Bistolli,* 2 *Barn. & C.* 511, a purchaser of some jewelry at an auction sale held it in his hands for a few minutes and tendered it back to the auctioneer, saying that there had been a mistake.    In an action to recover the price of the jewelry the court held "that to satisfy the statute there must be a delivery of the goods by the vendor, with an intention of vesting a right of possession in the vendee, and there must be an actual acceptance by the latter with the intention of taking possession as owner."    This language was adopted by Mr. Justice Gardner, in *Shindler* v. *Houston,* 1 *N. Y.* 261, the learned judge adding: "This, I apprehend, is the correct rule, and it is obvious that it can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intention of the parties."    In Parker *v.* Willis, Lord Chief Justice Campbell said : "Of the law there is no doubt.    To make an acceptance it is not necessary that the vendee should have acted so as to preclude himself from afterwards making objection to the quality of the article delivered; but he must have done something *indicating that he has accepted part of the goods and taken them as owner.* This may be indicated by his conduct, as when he does an act which would be justified if he was the owner of the goods and not otherwise.    In such a case the vendee doing that act is supposed to have accepted the goods and become the owner of them."    5 *El. & B.* 21, 26.    In Hinchman *v.* Lincoln, the Supreme Court of the United States held that, in order to take an alleged contract of sale out of the operation of the statute of frauds, there must be acts of such character as to place the property unequivocally within the power and under the exclusive dominion of the buyer, as absolute owner, discharged of all lien for the price.    124 *U. S.* 38, 48 ; *Morton* v. *Tibbett,*

15 *Ad. & E.* (*N. S.*) 428, 438. In Remick *v.* Sandford it was held that in an action for goods sold and delivered an acceptance, to take the case out of the statute of frauds, must consist of some unequivocal act of acceptance, and if the goods were sold by sample, it is not enough for the vendor to show merely that the goods came into the possession of the buyer, and that they correspond with the sample. There must be proof of an acceptance by some unequivocal act done on the part of the buyer with intent to take possession of the goods as owner. 120 *Mass.* 309, 316. Where payment is relied on as the compliance with the statute, words are not sufficient; some act in part performance or part execution of the contract, such as the surrender or cancellation of the evidence of the debt, or a receipt or discharge of the indebtedness, is necessary to make the contract valid. *Matthiessen & Weichers Refining Co.* v. *McMahon's Administrator*, 9 *Vroom* 536, 540.

In Finney *v.* Apgar the contract between the parties was for the delivery of spokes " at the dockyard below Brookville, the plaintiff to pile them up on the left-hand side of the road." This was done by him. Although it was a delivery in compliance with the contract, the court held that it was not an acceptance within the statute. Morton *v.* Tibbett was approved. A like decision was made in Pawelski *v.* Hargreaves. In that case it appeared that after the trucks were received at the plaintiffs' factory some slight alterations in them were made by the plaintiffs at the defendants' request, and that the defendants had engaged a painter to paint and letter the trucks. The rule deduced from these cases as the rule in force in this state is the English rule, that to constitute an acceptance there must be an acceptance by some unequivocal act with intent to take possession of the goods as owner.

The question of acceptance and actual receipt, being one of fact, will depend upon the circumstances of the particular case. Whether the acts which the buyer does or forbears to do amount to an acceptance and receipt within the statute of frauds is a question for the jury ; but where the facts in relation to a contract of sale within the statute of frauds are not

in dispute it belongs to the court to determine their legal effect and to withhold the facts from the jury when they are not such as can in law warrant finding an acceptance and actual receipt. *Norman* v. *Phillips,* 14 *Mees. & W.* 277 ; *Stone* v. *Browning,* 68 *N. Y.* 598 ; *Brown St. of F.,* § 321 ; *Hinchman* v. *Lincoln,* 124 *U. S.* 38. Placing the property in charge of the vendee for the purpose of testing it, with a view to enable the vendee to decide whether or not he will buy, is obviously not such an acceptance as will comply with the statute. *Stone* v. *Browning,* 68 *N. Y.* 598. Nor will the expressing of satisfaction with the result of the experiment by the vendee after the trial amount to an acceptance. Testimony to that effect would show that the purchaser approved of the quality of the goods, but is inadequate to establish an acceptance by him as owner. In the case now in hand it appears that the defendants distinctly refused to purchase, and there is no phase of the transaction upon the testimony as it appears in this case, that would justify a finding that there had been an acceptance within the meaning of the statute.

The rule to show cause should be made absolute.