TIMOTHY REMICK *vs.* JOSEPH H. SANDFORD & others.

Suffolk. March 14, 15. — May 6, 1876. AMES & MORTON, JJ., absent.

In an action for goods sold and delivered, the seller, if relying on an acceptance by the buyer to take the case out of the statute of frauds, must show some unequiv ocal act of acceptance, and, if the goods were sold by sample, it is not enough for him to show merely that the goods came into the possession of the buyer, and that they corresponded with the sample.

CONTRACT against Joseph H. Sandford, George Lovejoy and Robert P. Gould, copartners doing business under the firm name of O. A. Bingham & Co., to recover the price of twenty-four bags of wool of the value of $2930.40, sold and delivered by the plaintiff to the defendants. Answer: 1. That the sale was by sample, and with the representation and warranty that the wool corresponded with the sample, and that in fact it did not so correspond. 2. The statute of frauds.

After the former decision reported 118 Mass. 102, the case was tried in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff introduced evidence to show that the wool sold was a uniform lot of unwashed fleece wool, bought by him of a wool dealer at Norwich, Connecticut, who was present and testified that the wool was all one lot, with no difference; that he bagged it from a pile indiscriminately, and shipped it to the plaintiff. The plaintiff's witnesses further testified that the wool was received at the plaintiff's storehouse; that eight bags, without selection, about one third of the entire lot, were emptied of their contents on the floor; that the remainder was piled up in the bags in the next room, and the ends or sides ripped open and examined by Hall and Hollister, men in the employ of the plaintiff, who pronounced it alike; that the room, where the bags were, had other goods in it, and had no windows, but was lighted by double doors on each side, which were kept open during the day, that in March, 1872, the plaintiff requested one Williams, a wool broker, to find a purchaser for this wool; that Williams went down and examined both that on the floor and that in the bags, and Williams testified that it was a uniform lot of heavy fleece wool; that on March 20 he took the defendant Lovejoy

down to examine it for purchase; that they called at the plaintiff's office, and Hall, in the employ of the plaintiff, went down with them to the storehouse; that Lovejoy examined the wool in the pile, and asked Hall if it was "all one lot;" that Hall said he had examined it and could see no difference, and that it was all bought at the same time of one man, in one lot, that the rest of the wool was in the next room in bags, and could be got out in a few moments; that Lovejoy said he had examined it all he wanted to; that Lovejoy went into the next room and examined the bag of super-pulled wool, and said he would take that if he took the other; that he would, in such case, send his wagons for it; that Hall said it would be more convenient to send it by their wagons, and Lovejoy assented, if he decided to take it; that there was no statement or representation that the wool was all alike, or that that in the bags was of the same quality as that on the floor; that the price named for the fleece wool was forty-nine cents, and that for the super-pulled wool ninety cents per pound; that in the afternoon of the same day the broker met Lovejoy on the street, and Lovejoy said to him he would take the wool at the prices named; that the broker went to his office and made out triplicate sale notes, one of which he handed to Lovejoy at the defendants' counting-room, who looked at it and said it was "All right;" that he gave one to the plaintiff, and kept one himself. The one handed to the plaintiff was put in evidence, and is as follows:

"Boston, March 20, 1872.

"Sold for account of Mr. T. Remick to O. A. Bingham & Co.
Abt. 5,500 lbs. Un'hs Fleece Wool, price    .    49c.
1 Bag Super-pulled, price    .    .    .    .    90c.
Bags @ value.
Tare 3 lbs. each.
"Cash.    Terms, 30 days.          H. R. Williams, Broker."

It was further in evidence, that the above note was a true account of the sale; that the plaintiff's first knowledge of the sale was on receipt of the sale note; that on the next day the wool was weighed, and in the afternoon sent up to the defendants' store, who received and hoisted it into their loft; that a bill of it was sent to the defendants, that, on March 25, the defendants sent the plaintiff the following letter: "The wool received from

you not being like sample shown us, we refuse to accept, and hold the same subject to your order; " that was the first knowl-edge he had of any complaint by the defendants; that he replied by letter, dated March 26, stating that the wool was fairly repre-sented, and that he should hold the defendants to the trade, and received a letter from the defendants, dated March 27, inclosing the bill rendered, and requesting the removal of the wool without delay ; that Hall and Williams, at the request of the defendants, three or four days after the sale, went and looked at a portion of the wool emptied out of the bags at the defendants' store ; that Lovejoy said he had bought this to go with another lot of wool he had sold ; that it was not so good, and did not look like the same wool. Hall asked him to pick out one bag different from the rest, and Lovejoy said there was no difference, it was alike, but it was not the wool he bought; that he found no fault with the pulled wool, but did not want that unless he had the whole. One Miller, a wool merchant, who had examined the wool at Norwich, with a view to purchase it, and afterwards recognized and examined it at the plaintiff's storehouse prior to the sale, testified that it was a uniform lot of fleece wool. It was in evi-dence that this was the only lot of fleece wool the plaintiff had at the time, and that the bag of super-pulled wool was all one grade of super-pulled wool.

The defendants offered evidence tending to show that Lovejoy had been taken by Williams, as the broker employed by the plaintiff, to the plaintiff's store ; had met Hall there, and was taken into one loft in the plaintiff's storehouse on Russia Wharf, and there shown about three bags of wool opened on the floor ; that he examined it and found it was a good lot of unwashed fleece wool; that he asked Hall where the rest of the wool was, and Hall replied that it was in the other loft ; that it was dark there ; that the wool was in bags piled up behind some shoddy and waste wool, and that it would be very inconvenient to get at it. Lovejoy then asked if this was a fair sample of the entire lot, and Hall replied that it was; that Lovejoy then said if this was a fair sample of the lot he would purchase it ; that Hall said it was, and Lovejoy bought it then and there, and said he would send his own wagon after it when he wanted it; that either on the same afternoon, or upon the next, about 4 o'clock, a lot of

wool arrived at the defendants' store, in two wagons, sent by the plaintiff; that Lovejoy was then about leaving the store, and could not stop to examine the wool, but simply told his men to hoist it into the loft, which was done, and the wool remained there unopened until the next morning, when the men commenced to open the bags, and had opened eight or nine, when one of the men, who had before seen the samples at the plaintiff's store, seeing that this was not the wool he had been shown, ordered the men to stop opening the bags, and sent for Lovejoy, who came into the loft and saw the wool opened, and found it was of a very inferior kind and condition, and not two thirds the value of the sample shown him at the plaintiff's store; that Lovejoy ordered the men to stop opening the bags, simply ripped down the sides of the other bags, and saw that it was all of the same inferior condition; that he examined the bags of pulled wool, and found that it contained a large proportion of inferior grades of wool; and he then sent immediately for Hall to come and examine the wool; that Hall was out of town; that Lovejoy also sent for Williams, who called the next day, looked at the wool, and said " it was not the wool Lovejoy had bought;" that Lovejoy told him he should not take it, but should send it back; that a day or two after this Hall came in, and was shown the wool in the same position and condition as when the men stopped opening it, and was told by Lovejoy that it was not the wool he bought, and he should refuse to take it; that on the same day Lovejoy wrote the letter above referred to, dated March 25 ; that on the 25th, after Hall called and refused to take back the wool, Lovejoy had it repacked in the original bags, just as it came from the plaintiff, and had it stored in the loft in a place where it could easily be inspected or delivered to the plaintiff; that it so remained there subject to the plaintiff's orders, untouched by the defendants, until it was destroyed in the fire of November 9 and 10, 1872. The defendants also offered evidence tending to show that Lovejoy never received or saw any broker's note; and that such a note was never received or seen by any of the defendants or by any one in their employ.

The defendants also put in other evidence tending to show that this was a sale by sample; that the wool opened at their store was inferior to that shown by the plaintiff; and that, as

soon as the inferior condition of the wool was ascertained, they refused to take it.

Upon this evidence, the defendants contended that the plaintiff could not recover unless he proved a receipt and acceptance of the wool or some part thereof, or that something had been given in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the bargain was made and signed by the defendants or by some person thereunto by them lawfully authorized; that, if the sale was by sample, then it was a sale with a warranty that the bulk of the wool corresponded with the sample; that if it was such a sale, then the broker, having authority only to reduce to writing the actual terms of the sale, would have no right to sign any note or memorandum which did not contain that fact or element, and the note in this case would be invalid; and that, unless the jury found there had been a receipt and acceptance of the wool by the defendants, there could be no recovery in this case; so that the question for the jury was whether this was a sale by sample; that if they found that it was, then, whether the bulk of the wool corresponded with the sample or not, they must find a verdict for the defendants.

The defendants asked the judge to instruct the jury as follows:

"1. There can be no recovery in this case unless the wool has been received and accepted by the defendants, or unless there was a sufficient memorandum in writing.

"2. If, as soon as the wool was received and opened by the defendants, they refused to receive and accept it, and so notified the plaintiff, there would in law be no such acceptance of the wool as to bind the defendants or to answer the provisions of the statute of frauds.

"3. If there was no such acceptance, then, unless there was some note or memorandum in writing of the sale, signed by the defendants or some person by them duly authorized, the plaintiff cannot recover.

"4. If the actual sale made was by sample, such sale by sample would be a warranty that the bulk of the wool corresponds with the sample shown, and the broker would not be authorized to sign in behalf of the defendants any note which did not contain in effect this warranty.

" 5. If the sale was by sample, and the note did not, in effect, contain this element, such note would be invalid.

" 6. If such note is invalid, then there would be no valid sale which would bind the defendants."

The judge gave the 1st, 4th and 5th instructions asked, but declined to give any of the others in the language in which they were presented; but, to cover the points in the requested instructions alluded to, instructed the jury as follows:

" The important questions, upon which the case must turn, are whether the sale was an honest sale or not, and whether the sale was in the ordinary way, without the exhibition of any part of the wool as a sample, the defendants seeing the wool in part, and having opportunity to examine the whole; or whether the sale was by sample, with representation that the bulk was equal to the sample, which would imply a warranty. The first is substantially the plaintiff's theory, and the second substantially the defendants' theory. If the plaintiff's theory is affirmatively proved, then it was a good sale, and not affected by the statute of frauds, giving the plaintiff the right to recover. In that case, the note signed by the broker Williams is a true and sufficient memorandum in writing of the sale; and, also, the delivery of the wool at the storehouse of the defendants, and its receipt by them into their storehouse, (if the jury believe the plaintiff's evidence upon that point,) was a delivery and acceptance on their part, sufficient under the statute of frauds. But if the jury are satisfied of the truth of the defendants' theory, that the sale was by sample, then if the defendants, even after the delivery and receipt of the wool into their store, discovered for the first time that the bulk did not substantially conform to the sample, they had a right to give the notice which they gave, and be free from obligation to pay for the wool, and had a right to the position that there was no acceptance of the delivery of the wool on their part, and no memorandum in writing such as the statute aforesaid requires." Other instructions were given to the jury as to what constituted a sale by sample, and in other respects, which were not objected to by the defendants.

The jury returned a verdict for the plaintiff for the full amount claimed; and the defendants alleged exceptions.

*C. T. Russell & C. T. Russell, Jr.*, for the defendants.

*F. S. Hesseltine*, for the plaintiff.

DEVENS, J. To the instructions given, upon the theory of the plaintiff, that the sale of the goods was in the ordinary way, and not a sale by sample, with an implied warranty that the goods should be equal to the sample, no exception is taken. It was however contended by the defendants that the sale was by sample, and that there was no written memorandum of the contract (it being a sale of goods to the value of more than fifty dollars) such as is required by the statute of frauds. The broker's note did not afford such evidence, as it omitted the important element of a warranty upon the sale, and, if such was the sale, was unauthorized. *Remick* v. *Sandford*, 118 Mass. 102. The plaintiff, to meet the theory of the defendants, and to avoid its effect, contended that the goods were accepted and received by the defendants, and that therefore, this being proved, no written memorandum of the contract was necessary, but that its terms might be proved by parol.

As the verdict rendered was general, it cannot be ascertained whether the jury found for the plaintiff on the ground that the sale was not by sample, or on the ground that, although it was a sale by sample, yet that there had been an acceptance of the goods under the sale, and that they corresponded to the sample. It becomes necessary to inquire, therefore, whether the instructions were, upon the latter aspect of the case, correct.

These treat the delivery of the wool at the storehouse of the defendants, and its receipt therein by them, as a delivery and an acceptance on their part, sufficient, under the statute of frauds, to permit parol evidence of the contract; but recognize that if, upon examination, it was found not to correspond to the sample, the defendants might reject it, and take "the position that there was no acceptance of the delivery of the wool on their part" such as the statute requires. The right to reject the wool, thus accorded to the defendants, is only the same right which they would have had if it had been sold by sample and a written memorandum thereof made. They could then have returned it after delivery, and defended successfully against an action for its price, if it failed to correspond to the sample. The wool having been taken into the defendants' warehouse, the question whether there was an acceptance and receipt was thus made to depend upon whether it should have been accepted, inasmuch as it corresponded to the contract.

There may undoubtedly be an acceptance, which will not afford conclusive evidence that the contract has been fulfilled and its terms complied with, and which will yet satisfy the statute and let in evidence of those terms, which otherwise could only be proved by writing.  If the buyer accepts the goods as those which he purchased, he may afterwards reject them, if they are not what they were warranted to be, but the statute is satisfied. But, while such an acceptance satisfies the statute, in order to have that effect it must be by some unequivocal act done on the part of the buyer, with the intent to take possession of the goods as owner.   The sale must be perfected, and this is to be shown, not by proof of a change of possession only, but of such change with such intent.   When it is thus definitely established that the relation of vendor and vendee exists, written evidence of the contract is dispensed with, although the buyer, when the sale is with warranty, may still retain his right to reject the goods if they do not correspond with the warranty.  *Morton* v. *Tibbett*, 15 Q. B. 428.  *Johnson* v. *Cuttle*, 105 Mass. 447.  *Knight* v. *Mann*, 118 Mass. 143, and cases cited.

That there has been an acceptance of this character, or that the buyer has conducted himself, in regard to the goods, as owner, (as by a resale, which would deprive him of the option to take or decline them, and which is of itself an acceptance,) is to be proved by the party setting up the contract.  It cannot be inferred, as matter of law, merely from the circumstance that the goods have come into the possession of the buyer.   All that the ruling gives to the defendants is the right to reject the goods if they did not correspond to the sample, which they would have had by the common law, even if there had been a written memorandum.   But they had more than this, as there was no such memorandum ; they had a right arbitrarily to refuse the acceptance of the goods, unless they did or had done some act in relation to them consistent only with their own ownership, and inconsistent with that of the seller.   The circumstances under which they received the goods, and the manner in which they acted in reference to them, were to be considered as evidence. These might show that they received the goods with the intent to accept them, as being the goods they purchased, and as the owners of them, but they might also show that they received

them only for the purpose of examination. A receipt for such a purpose is not inconsistent with their continuing still the property of the seller. *Hunt* v. *Hecht*, 8 Exch. 814. *Curtis* v. *Pugh*, 10 Q. B. 111.                             *Exceptions sustained.*