STEPHEN KEMENSKY *vs.* GARDNER CHAPIN & another.

Franklin.    September 25, 1906. — January 3, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Frauds, Statute of.    Sale.*

A memorandum of a contract for the sale of goods which does not name the price is not sufficient to satisfy the statute of frauds.

Under an oral contract for the sale of goods by sample, a delivery of the goods by the seller upon a railroad car sent by the buyer to receive the goods for transportation to him, although it is a delivery to the buyer, does not constitute also an acceptance sufficient to satisfy the statute of frauds.

Under an oral contract for the sale of goods by sample the receipt and examination of the goods by the buyer merely for the purpose of ascertaining whether they correspond with the sample do not constitute an act of acceptance.

Where there is an oral contract for the sale by sample of goods for the price of $50 or more, and the buyer receives and examines the goods merely for the purpose of ascertaining whether they correspond with the sample, without accepting them as those that he purchased, and arbitrarily and unreasonably refuses to accept them, if the seller sues for damages for the breach of the contract and the defendant sets up the statute of frauds, and there is no memorandum in writing of the bargain sufficient to satisfy the statute and no part payment, the plaintiff cannot recover on showing that the goods delivered by him were in accordance with the sample and that the defendant ought to have accepted them.

CONTRACT, with three counts, the first for $397 for onions sold and delivered, the second for damages for the breach of an oral contract to purchase the same onions, and the third on an account annexed, all three counts being alleged to be for the same cause of action. Writ dated February 19, 1906.

The answer contained a general denial, alleged that the onions were sold by sample and were not in accordance with the sample, and pleaded R. L. c. 74, § 5.

In the Superior Court the case was tried before *Hitchcock*, J. The plaintiff was a Polish farmer, and testified that in 1905 he raised onions on land of one Walsh and land of one Cooley in the town of Sunderland on shares; that the onions were divided in the field, the plaintiff taking his half in each instance and storing them in the cellars of Walsh and Cooley respectively; that some time about the middle of January he took samples of onions ranging from an inch and a half in diameter to three inches in diameter in a crate and went to Boston and there saw one of the defendants; that the plaintiff showed the defendants the samples, asking eighty cents for the large onions and the defendants offering a less sum; that one of the defendants asked the plaintiff how many onions he had above an inch and a half in diameter, and the plaintiff replied that he did not know but he thought from four to five hundred bushels; that one of the defendants then said, " I will place a car on the track at North Amherst and give you fifty cents a bushel for all onions over and above an inch and a half in diameter, delivered on our car at North Amherst, Mass., and we will pay the freight "; that the plaintiff accepted the offer and left the samples of the onions with the defendants; that after the above offer, the defendants turned

to a barrel of small onions, which they had in their place of business, and picked out some small onions running from an inch to an inch and a half in diameter and said to the plaintiff, " Got any onions like those ? " ; that the plaintiff said he had; that one of the defendants said, " We will give you thirty-five cents a bushel for all onions below an inch and a half in diameter " ; that the defendant Preston V. Chapin, the only one of the defendants with whom the plaintiff had any conversation, told the plaintiff to go home and get the onions ready according to the agreement, and that the defendants would send a car for them; that the plaintiff went home and screened the onions according to the agreement; that he notified the defendants by letter that the car had not come, and afterwards received from the defendants a letter, dated January 25, 1906, a copy of which is printed below, marked " C " ; that about January 30 the car arrived at North Amherst and the plaintiff put into the car seven hundred and twenty-nine bushels of onions more than an inch and a half in diameter and ninety-four bushels less than an inch and a half in diameter; that he screened the large onions over a wooden screen, which was constructed of plank with holes that would let through an onion an inch and a half in diameter or less; that after screening the large onions, he put those more than an inch and a half in diameter in sacks of two bushels and one bushel each; that he then screened the onions that went through the screen, over a screen constructed in the same manner with holes that would let through an onion one inch in diameter, and the onions between an inch and an inch and a half in diameter, which were designated as small onions, he put in sacks of one and two bushels each; that the large onions were good, sound, merchantable onions of first quality; that the small onions were good, sound, merchantable onions; that the large onions were known and designated as No. 1 and the small onions were known and designated as No. 2 ; that after sacking the onions, he hauled them by team to the place where the car of the defendants was placed on the track, which was near a point called Cooley's, and loaded all of the onions upon the car and shipped them to Chapin Brothers. A shipping receipt in the ordinary form was put in showing that the Boston and Maine Railroad received from the plaintiff at Amherst station, on January 31, 1906, seven hundred and twenty-nine bushels No. 1 onions and

ninety-four bushels No. 2 onions consigned to Chapin Brothers, Rutherford Avenue, Boston, the weight of the onions stated on the receipt to be forty-three thousand pounds, with letters indicating that the weight was the shipper's weight, signed "Boston and Maine Railroad by F. A. Cady"; that on February 5 or 6 the plaintiff received from the defendants a letter dated February 3 refusing to accept the onions, a copy of this letter being printed below marked "F"; that after the receipt of this letter the plaintiff went immediately to Boston to see Mr. Chapin; that he saw Preston V. Chapin and said, "What you done with that onions?"; that Chapin said the onions were not satisfactory; that the plaintiff asked Chapin to take the onions and Chapin said he did not "know what brother was going to say."

The plaintiff further testified that the defendants refused to take the onions; that the onions had been "all mixed up" and had been injured by being frozen, and that he finally sold them for ten cents a bushel, receiving for them $80 in all; that the freight on the onions was $57; that the onions when he loaded them on to the defendants' car were sound and in merchantable condition and the large onions were of as good a quality as the sample shown to the defendants; that the small onions were equal to or better than the sample which the defendants showed to the plaintiff; and that they were put up into sacks in proper condition, two bushels and one bushel in a sack according to the defendants' direction.

The defendants' letter of January 25, 1906, marked "C," was as follows:

"C.

"Boston, Jan. 25, 1906.

"Mr. Stephen Kemensky,
        "Sunderland, Mass.
                "Box 105, care of Wm. R. Ahearn.
"Dear Sir:

"Yours of Jan. 24th received and noted. Will say that I billed out a car from here to you at North Amherst, in care of W. C. Cooley, as directed. I think it was the second day after you were in here. I will look it up and let you know in regard to it and will bill out another car to you to-morrow, as we have one here being unloaded.

"Respectfully,
                "Chapin Bros."

The defendants' letter of February 3, 1906, marked " F," was as follows :

"F.

"Boston, Feb. 3, 1906.

"Mr. Stephen Kemensky,

"Sunderland, Mass.

"Box No. 105.

"Dear Sir:

"Your car of onions No. 9566 M. D. T. Co. arrived and was set at our house this morning. I notice by the bill of lading that it calls for 729 bushels of No. 1 onions and 94 bushels of No. 2 onions. This is not according to what we bought. We bought of you 400 bushels of extra onions and 200 bushels of No. 1s. We opened up the car and looked at them and find that the bags are not marked and that they do not run even weight. Some are bushels, some bushels and a peck and others two bushels, etc. You agreed to put these onions up the extras in two-bushel bags and the No. 1 in one bushel bags. We find that the best onions are good fair onions. We dumped out four small bags, probably holding about one bushel and picked out at least two bushels of small onions from them and we put them back into the bags and back into the car. We found one or two bags of small onions, what we would term in the fall of the year 'pickle' onions, little bits of things that would not run over 1 to 1 1-2 inches in diameter, if they did that. We cannot receive this car and have ordered it back to Somerville to the bulk track and shall notify the Boston & Maine R. R. that we shall not receive it, therefore, you will please make other disposal of it.

"Respectfully,

"Chapin Bros."

The bill of exceptions contained the following statement:

"There was no note or memorandum in writing of the bargain signed by the defendants or either of them or by any person authorized by them, unless the defendants' letters of Jany 25th and February 3d, 1906, constitute such."

At the close of the plaintiff's evidence the defendants suggested that the evidence showed a contract within the statute of frauds and that there was nothing for the jury, and requested the judge to direct the jury to return a verdict for

the defendants. The judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

The case was submitted on briefs at the sitting of the court in September, 1906, and afterwards was submitted on briefs to all the justices.

*W. A. Davenport,* for the plaintiff.

*C. R. Elder,* for the defendants.

BRALEY, J. Independently of R. L. c. 74, § 5, which makes unenforceable a contract for the sale of goods for $50 or more where there is neither a memorandum in writing nor a partial payment of the price, unless the purchaser receives and accepts a part of the goods sold, it became a question of fact whether the onions which the plaintiff delivered corresponded in size and quality with those shown by the sample. *Townsend* v. *Hargraves,* 118 Mass. 325, 332. *McLean* v. *Richardson,* 127 Mass. 339. *Obery* v. *Lander,* 179 Mass. 125, 131.

But, if upon this issue the verdict might have been in his favor, as the statute of frauds had been pleaded, the plaintiff, before he could recover, was obliged to offer some evidence which tended to show an acceptance by the defendants. *Snow* v. *Warner,* 10 Met. 132, 137, 138. *Davis* v. *Eastman,* 1 Allen, 422. *Goddard* v. *Binney,* 115 Mass. 450, 456. *Safford* v. *McDonough,* 120 Mass. 290. His argument that this proof was unnecessary as the correspondence previous to delivery, when taken in connection with the shipping receipt, constituted a sufficient memorandum to satisfy the statute, fails, because these papers are silent as to the essential element of price. *Waterman* v. *Meigs,* 4 Cush. 497. *Smith* v. *Colby,* 136 Mass. 562.

By the terms of the sale, which for the purposes of these exceptions must be taken to be as stated by the plaintiff, although the delivery to the railroad company selected by them was a delivery to the defendants, yet as the carrier was authorized only to receive the onions for transportation there was no express or implied authority conferred to accept, and under such conditions mere delivery does not constitute an acceptance. *Johnson* v. *Cuttle,* 105 Mass. 447. *Atherton* v. *Newhall,* 123 Mass. 141. Compare *Strong* v. *Dodds,* 47 Vt. 348.

In *Remick* v. *Sandford,* 120 Mass. 309, 316, it is said: "If the

buyer accepts the goods as those which he purchased, he may afterwards reject them, if they are not what they were warranted to be, but the statute is satisfied." See also *Frostburg Mining Co.* v. *New England Glass Co.* 9 Cush. 115. If there was a transfer of possession not only to the carrier, but subsequently by the actual receipt of the car and its contents by the defendants at their place of business, this transfer cannot be treated as constituting an acceptance, which means an assent by the buyer as owner to take, in whole or in part, the merchandise delivered as being that for which he bargained. To determine this question the ordinary test is whether the conduct of the buyer in dealing with the goods is such as fairly to indicate an assertion of ownership, and where the sale is upon an express or implied warranty an examination at the time of delivery, and nothing more, is insufficient. *Remick* v. *Sandford, ubi supra.* Under the terms of sale the parties contemplated that at some period the defendants should have an opportunity to ascertain if in bulk the onions corresponded with those shown by the sample. Upon the arrival of the car this right was exercised, but the examination being for this specific purpose could not be deemed an act of acceptance. *Remick* v. *Sandford, ubi supra. Taylor* v. *Smith,* [1893] 2 Q. B. 65, 71. See also *Devine* v. *Warner,* 75 Conn. 375, 380; *Lloyd* v. *Wright,* 25 Ga. 215; *Jones* v. *Mechanics Bank,* 29 Md. 287; *Hewes* v. *Jordan,* 39 Md. 472; *Maxwell* v. *Brown,* 39 Maine, 98; *Edwards* v. *Grand Trunk Railway,* 48 Maine, 379, 381; *Smith* v. *Brennan,* 62 Mich. 349; *Fontaine* v. *Bush,* 40 Minn. 141; *Clark* v. *Labreche,* 63 N. H. 397; *Shindler* v. *Houston,* 1 Comst. 261, 269; *Stone* v. *Browning,* 51 N. Y. 211; *S. C.* 68 N. Y. 598; *Cooke* v. *Millard,* 65 N. Y. 352, 368; *Gibbs* v. *Benjamin,* 45 Vt. 124; *Hill* v. *McDonald,* 17 Wis. 97, 101; *Bacon* v. *Eccles,* 43 Wis. 227, 237; Browne, St. of Frauds, (5th ed.) § 316, *a–c;* Benjamin, Sales, § 214. After examination the defendants declined to accept, and immediately notified the plaintiff by letter stating their reasons, and while the jury could have found that in fact these reasons were unfounded, such a finding would have been inconclusive, as under the statute the buyer is at liberty to refuse, even if his action could be found to have been arbitrary and wholly unreasonable.

The defendants acted solely within their rights, even if all the

bags were opened for the purpose of inspecting the contents of each, as in no other satisfactory way could a comparison be made between the sample and the consignment received.   Up to this point, therefore, there had been no assumption of ownership sufficient to satisfy the statute.   *Knight* v. *Mann,* 118 Mass. 143. *Remick* v. *Sandford, ubi supra.*   By directing the transfer of the car to the general yard of the railroad, after their notice to the plaintiff, they did not exercise any dominion as owners over its contents, as they were only taking the steps usually required to indicate positively that they declined to accept and that thereafter the onions were subject to the plaintiff's disposal.   *Atherton* v. *Newhall, ubi supra.   Dorr* v. *Fisher,* 1 Cush. 271. *Douglass Axe Manuf. Co.* v. *Gardner,* 10 Cush. 88, 90.   *Cox* v. *Willey,* 183 Mass. 410, 412.

The case appears to be one of peculiar hardship to the plaintiff, but as the unequivocal acts of the defendants are insufficient to show acceptance, a verdict in their favor was rightly ordered. *Remick* v. *Sandford,* 120 Mass. 309.   *Knight* v. *Mann,* 118 Mass. 143.   *Atherton* v. *Newhall,* 123 Mass. 141.   *Denny* v. *Williams,* 5 Allen, 1.   *Howard* v. *Borden,* 13 Allen, 299, 300.   *Stone* v. *Browning,* 51 N. Y. 211; *S. C.* 68 N. Y. 598.

*Exceptions overruled.*