DICKRAN M. SARKISIAN *vs.* WOODMAN H. W. TEELE.

Suffolk. January 25, 1909. — May 18, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract,* What constitutes. *Frauds, Statute of. Equity Jurisdiction,* Specific performance, Insolvency of defendant.

If the parties to a contract to be executed in writing put their agreement in writing but defer its execution and do not sign it, it is not a contract.

A contract for the sale of a business including the stock in trade, fixtures and good will of the seller, if it includes also the seller's leasehold interest in the premises where the business is carried on, is a contract for the sale of an interest in land within the meaning of R. L. c. 74, § 1, cl. 4, as well as a contract for the sale of goods, wares or merchandise under § 5 of the same chapter.

An oral contract to execute a contract in writing embodying terms which bring it within the statute of frauds is itself within the statute.

A contract for the sale of a business, including the stock in trade, fixtures and good will of the seller and also including the seller's leasehold interest in the premises where the business is carried on, is not taken out of the statute of frauds by a delivery and acceptance of a part of the goods composing the stock in trade, because the contract is an entire one, and the sale of the leasehold interest is an essential part of it which cannot be separated from the sale of the merchandise and business.

In a suit in equity to enforce specifically an alleged contract for a sale by the defendant to the plaintiff of the stock in trade, fixtures and good will of the defendant's business and his leasehold interest in the premises in which it is carried on, where the contract is within the statute of frauds and there is no memorandum in writing of it signed by the defendant, if the plaintiff can prove that, in consequence of his expectation of performance of the contract by the defendant, he was put to expense in spending a considerable part of his time in a certain city during the negotiations, that he cancelled the lease of a store which he had intended to open, with a consequent loss of business, discharged an employee in order to comply with the terms of the agreement and allowed to lapse a suit which he had brought against the defendant for the value of certain property which was provided for in the contract, and that he also ceased to carry on a theretofore existing competition with the defendant, this does not show such a part performance of the contract by the plaintiff as to entitle him to have it enforced against the defendant, such expenses of the plaintiff and changes in his business being purely collateral matters which are not shown to have been entered upon with the actual knowledge or assent of the defendant.

In a suit in equity for the specific performance of an alleged contract, where it appears that the alleged contract was within the statute of frauds and that the statute was not satisfied, the insolvency of the defendant does not confer jurisdiction in equity to assess damages for a breach of the contract.

BILL IN EQUITY, filed in the Superior Court on September 4, 1908, to enforce the specific performance of an alleged agree-

ment, partially reduced to writing but not signed by either party, by which the defendant agreed to sell to the plaintiff the stock in trade, fixtures and good will of the defendant in the business of manufacturing and selling upholstery supplies consisting chiefly of brass goods, carried on by the defendant in the city of New York.

In the Superior Court the case came on to be heard by *Wait*, J., and the plaintiff made the offer of proof which is printed below. The defendant did not admit the facts to be as stated in the offer of proof, but contended that if the statements all were true the plaintiff could not maintain his bill. Thereupon, the judge, being of opinion that upon the facts stated in the offer of proof he could find nothing sufficient to maintain the bill, found for the defendant, and ordered that a decree be entered dismissing the bill. At the request of the plaintiff he reported the case for determination by this court. If he was right in his findings and ruling, a decree was to be entered as ordered dismissing the bill ; if not, such orders were to be made as justice and equity required.

The plaintiff offered to prove the following facts:

The plaintiff and the defendant have had business relations for the last ten or eleven years. About eleven years ago the plaintiff entered the employ of the defendant as a clerk, and was advanced from position to position until he finally became a partner with him in his New York business on equal terms. The defendant is engaged in the business of manufacturing and selling upholstery supplies, consisting chiefly of brass goods. Up to about five years ago the business was confined to the city of Boston, but in January, 1903, a corporation was formed and a store was opened in the city of New York, and in June it was placed in charge of the plaintiff, as the manager was making a failure. The business was then successful, and later another arrangement was made whereby the corporation ceased to do business in New York and the business was continued by the plaintiff and the defendant as partners, the plaintiff devoting his entire time to the New York business. The business continued to be very successful, but toward the close of the year 1907 various disagreements arose between the partners and the partnership was dissolved; the plaintiff disposed of his interest in

the partnership to the defendant and began to do business in the same line as a stockholder and officer in an existing corporation, which then was doing business in New York in competition with the defendant, known as Gould-Mersereau Company. The plaintiff and the defendant have since been in active competition, and the competition was fiercer than that existing between any other houses, has been so bitter that neither would sell any of his goods to the other, and both had cut prices until the margin of profit on many lines was very slight.

Shortly after the separation the business of the defendant began to decrease, and in May at the instance of one Turner, a common friend of the parties and a creditor of the plaintiff, negotiations were begun for the sale of the defendant's business to the plaintiff, the proposition being made by the defendant to the plaintiff. These negotiations fell through, but in the latter part of July they were reopened, a proposition being made by the defendant to the plaintiff, it being represented to the plaintiff that the defendant was conducting business at a loss and was in poor health, that he had come to the conclusion that it was unwise for him further to attempt to run both the Boston and New York establishments, being part of the time in each place and a great deal of the time travelling between them. It was, therefore, arranged that the plaintiff and the defendant should meet with their attorneys in Boston on Monday, August 3, 1908, at the office of one Yerxa, and they did so, but as Yerxa wished to have Turner present the meeting was adjourned until the following day when Turner, who had been summoned by telephone, was present.

The subject matter of the transaction was gone over thoroughly, point by point, and as the various items were agreed to they were reduced to writing by the attorneys. The matter was finally covered some time in the afternoon and it was agreed to adjourn until the next day to give the attorneys an opportunity to have their memoranda typewritten, and a fair copy of the contract as it then stood prepared. The following day, typewritten copies of the agreement having been prepared, the copies were gone over thoroughly, and several minor amendments were suggested and agreed to. During the discussion several outstanding merchandise contracts which had been entered into by the

defendant were mentioned and were definitely disposed of, being assumed by one party or the other as will hereinafter appear, and the question of the application of the existing law of New York regulating the sales of merchandise in bulk was brought up. In order to find out the application of this law it was agreed that the attorney for the plaintiff should obtain the exact phraseology of the act, and the meeting was adjourned for that purpose. Before adjourning, the defendant stated that he was satisfied with the contract as it then stood with the addition of a clause requiring compliance with the New York bulk law, and promised to sign the contract as soon as the wording of that act should be ascertained and a suitable clause relating to it should be added to the existing draft. The parties met again on the same day and a clause was added to the contract, and agreed to, requiring the defendant to comply with the terms of the act above mentioned. The plaintiff then made a formal demand of the defendant to furnish him a complete and accurate list of his creditors, which demand the defendant acknowledged and promised to comply with. The defendant and his attorney then stated that there was a contract of employment which had been entered into by the defendant with one Smith, which they desired to have disposed of before signing the contract of sale. The plaintiff objected to a postponement of the matter on that account, but the defendant and his attorney told him, and Yerxa assured him in the defendant's presence, that the contract would be signed on the following Saturday at all events, that they wished to delay signing merely that they might be in a better position to deal with Smith, stating that they could dispose of him more effectively if they could say that the contract was not signed than would be the case if they were obliged to tell him that they had committed themselves to the sale of the business. Upon the assurance of the defendant, his attorney and Yerxa that the disposal of the Smith contract was not a condition to the signing of the contract of sale and that the contract of sale as it then stood would be signed on the following Saturday at all events, the plaintiff assented to the postponement.

The terms of the contract, as finally agreed to, were as follows:

"Memorandum of an agreement made this　　day of August

1908, by Dickran M. Sarkisian, of Malden, County of Middlesex and Commonwealth of Massachusetts, party of the first part, and Woodman H. W. Teele, of Cambridge, in said County of Middlesex, party of the second part.

" The party of the first part does hereby purchase and the party of the second part does hereby sell to the party of the first part the entire stock of goods in trade (less certain deductions hereinafter mentioned) connected with and used in the business transacted by the party of the second part under the name of W. H. W. Teele & Company, at 43 East 20th Street, New York City, also the fixtures and good will of said business in New York City, with the right to use the name of W. H. W. Teele & Company only in connection with the name of Dickran M. Sarkisian, as successor thereto, and then only until January 1st, 1909.

" Out of the stock now on hand it is agreed that the party of the second part shall take in value not less than fifteen thousand dollars nor more than twenty thousand dollars of said stock of goods. The value of the goods so taken out to be determined at the inventory prices of goods on hand December 31st, 1907, and the cost prices of goods purchased since. The balance of the stock of goods is to be paid for by the said party of the first part as follows:

" The goods acquired since January 1st, 1908, shall be paid for by the said Sarkisian at cost price, less 35 %. The goods which were in stock and were in the inventory dated December 31st, 1907, shall be taken by the said Sarkisian at the inventory price less 35 %.

" The remaining articles of such stock of goods which were purchased prior to January 1st, 1908, and which were allotted to the party of the second part January 1st., 1908, shall remain the property of the party of the second part.

" One party shall take the wood cuts and the other party shall take the electrotypes now used in said business and the party of the second part shall have his choice as to which of the two he shall take.

" The items above enumerated include all the merchandise, stock in trade and property whatsoever, except the fixtures.

" The fixtures which were in the store January 1st, 1908 shall

be left therein and shall be taken by the said party of the first part at the inventory price of the same, and in addition to such inventory price the party of the first part shall pay and allow to the party of the second part for such fixtures the sum of one hundred and fifty dollars. This last named sum is to cover the expense which the party of the second part has made upon said fixtures since the first day of January 1908.

" The party of the first part assumes and hereby agrees to take care of the contracts for the purchase of merchandise which may be delivered after the final transfer hereinafter mentioned, which have been ordered or contracted for, prior to the signing hereof, of the following firms, to wit:

" Rome Manufacturing Company.
　Turner & Seymour Manufacturing Company.
　American Pin Company.
　American Ring Company.
　Berbecker & Rollan Manufacturing Company.
　M. S. Brooks & Sons.
　Rogers Screw Company.

" Such merchandise as shall be taken by the said party of the second part, as hereinbefore provided, out of the stock of goods in trade, shall be removed from the premises on or before August 22nd, 1908.

" An inventory in duplicate shall be prepared by the party of the second part of the remaining articles and the possession of such remaining articles and the entire stock shall be given to the party of the first part by the party of the second part on or before September 1st., 1908.

" This inventory so to be prepared shall be submitted to the party of the first part on or before August 27th., 1908. In the taking of this inventory the stock shall be taken by two men selected by each party, and the store shall be closed at the commencement thereof and remain closed until the final transfer. On August 27th., 1908, the stock remaining in the inventory shall be called off by the party of the first part. The prices of the several goods shall be placed on the inventory and the total amount to be paid therefor shall be verified by the initial signatures of each party.

" The party of the first part assumes no responsibility whatso-

ever on account of bills payable which may be due before the final transfer.

" The party of the first part assumes the lease of the store for the balance of the term from the date of the final transfer and agrees to hold the party of the second part harmless therefor.

" The party of the first part also assumes and agrees to pay a proportion of the taxes and insurance which shall be apportioned pro rata.

" There shall be delivered to the party of the first part by the party of the second part at the time of the final transfer all the books of accounts relating to the business, except the ledgers, cash books and receipt books, and the said party of the second part shall have access to and use of the sales books pertaining to the business transacted up to September 1st., 1908, at any time upon demand, and the party of the first part shall be allowed to take a list of the customers whose names appear in the ledgers, before the ledgers are removed from the store. The party of the second part shall also deliver to the party of the first part all the stationery on hand, and whatever is left thereof at the end of the year shall be returned to the party of the second part.

" It is hereby agreed that for the period of five years the party of the second part shall not directly or indirectly solicit any business of the same line in New York City, and that the party of the first part during said period shall not directly or indirectly open any store or carry any stock of merchandise of a similar line in the states of Massachusetts, Maine and New Hampshire, and the party of the first part shall have but one representative in said states. That in the three states last mentioned the party of the first part will not sell any of these goods secured under this agreement at below the then prevailing market price.

" Upon the final transfer of the property as aforesaid, the party of the first part shall pay to the party of the second part the sum of five thousand dollars in cash. The balance of the consideration verified as before stated shall be paid by the party of the first part to the party of the second part in two notes of equal amount, one payable in two months and one in three months from the time of the final transfer.

" The party of the second part agrees to comply in all respects with the existing law relating to the sale of merchandise

in bulk, in so far as the said law applies to the property herein transferred.

" Together with the passing of this agreement there shall be given a general release of all demands of every name and nature of each party to the other, excepting such obligations as arise out of this contract and such other obligations as are named in the written agreements made at the time of the dissolution of partnership between the two parties December 30th., 1907."

It was further agreed by and between the parties that if the plaintiff should require any of the goods comprised in the agreement for use or sale by Gould-Mersereau Company before the transfer of the property, he could receive them upon his or their order from the defendant, and goods so obtained by him or them out of the stock sold by the defendant should be carried on memorandum and added to the inventory which the defendant agreed to make, whenever the inventory should be made. It also was agreed that the parties should meet in New York on the following day and call upon the presidents of two national banks, which held notes signed by the defendant, to acquaint them with the fact that the defendant had sold his business and to get them to grant an extension of the notes in order that the defendant might pay them in full, or in part, out of the money which he was to receive from the plaintiff.

In consequence and in pursuance of the foregoing agreement the parties met at the office of the defendant in New York, on Thursday, August 6, and while there the defendant requested of the plaintiff that he would fill the defendant's orders for merchandise from the store of Gould-Mersereau Company now that the agreement for sale had been completed. Relations between the two concerns had ceased in April, 1908, and no goods had been sold by either to the other since that time. The plaintiff replied that now that the agreement was completed and they were friends again the defendant could have anything he needed from the store of Gould-Mersereau Company. The plaintiff then asked the defendant if he had spoken to his salesmen of the sale, and upon being informed that he had not, asked his permission to speak of it to one who was then present. With the permission of the defendant the plaintiff told the salesman of the sale, and later, on the same day,

made an arrangement to employ him on and after the first of September.

The parties then called upon the presidents of the banks, which held the defendant's notes, and the defendant told each of them that he had sold out his New York business to the plaintiff and that he was unable to pay his notes when they came due, and asked for an extension of time which was granted.

The plaintiff gave directions to his employees to obtain from the defendant whatever goods they might need to fill orders, such goods to be taken from the stock purchased by him of the defendant, and also told them that if the defendant should send in orders for goods those orders were to be filled, thus modifying the rule of the establishment, which was well known to the defendant, that no goods were to be sold to the defendant. The defendant's manager came to the store of the Gould-Mersereau Company for goods on the same day, not having been there since the previous April when the partnership was finally dissolved.

In pursuance of the agreement relating to the delivery of goods by the defendant to the plaintiff and in consequence of it the plaintiff received from the defendant

| On August | 8th, 1908, | goods amounting in value to | $5.88 |
|-----------|-----------|------------------------------|-------|
| "      " | 10th,  "   "      "       " | 5.10 |
| "      " | 15th,  "   "      "       " | 5.40 |
| "      " | 17th,  "   "      "       " | 2.03 |
| "      " | 26th,  "   "      "       " | 1.52 |
|          |           | making a total of | $19.93 |

which goods were delivered to him and accepted and received by him and, the plaintiff says, must in law be taken to have been delivered, received and accepted in part performance of the contract sought specifically to be enforced.

No invoices accompanied or followed the goods (which was contrary to the custom of the defendant) nor were any sent until late in August, after the plaintiff had notified the defendant that he intended to compel the performance of the contract, whereupon invoices were sent, charging the goods to the Gould-Mersereau Company, at prices far in excess of the amount agreed

upon. These invoices were returned with the information that the goods should not be charged to the Gould-Mersereau Company, but should be carried on memorandum in accordance with the agreement of the parties, and added to the inventory which should subsequently be made. These invoices are still in the possession of the defendant.

On Saturday, August 8, the parties met again by appointment, and it was stated by the defendant that he had not yet been able to make a satisfactory arrangement with Smith, and asked for further time; the plaintiff objected to the postponement on the ground that the Smith matter had no connection with this contract, but finally assented, upon the assurance that on the following Wednesday the contract would be signed.

On Tuesday the defendant's attorney announced that no arrangement had yet been made with Smith, and upon his suggestion Smith was sent for and came from New York, arriving in Boston on Wednesday.

After extended negotiations with Smith, without result, the signing was further postponed in spite of the objections of the plaintiff. Some time after the middle of the month it became apparent to the plaintiff that the signing of the contract by the defendant would be indefinitely postponed, and he was not until after that time acquainted with the legal significance of the signatures to the contract or of the delivery of the goods in part performance of it.

As he had then been at great expense in the course of the negotiations, spending considerable of his own time in Boston and had already cancelled a lease of a store in Boston which he had been intending to open, with consequent loss of business, had discharged an employee in order to comply with the terms of the agreement, and had allowed to lapse a suit which he had commenced against the defendant for the value of the electrotypes and woodcuts, the disposition of which was effected by this contract, and, as he further offered to show, the competition which existed between him and the defendant would continue indefinitely to his irreparable damage, and as the defendant was deeply in debt and losing money and was, or was likely to be, insolvent, he decided to enforce the performance of the contract, and the defendant was so notified. Thereupon invoices came

from the defendant charging to the Gould-Mersereau Company the goods which had been delivered to the plaintiff and received and accepted by him as part of the goods sold to him, which invoices were returned as previously stated.

On September 1 the plaintiff, with a witness, called at the store of the defendant and demanded of him the transfer of the stock and further compliance with the terms of the contract, offering to pay the money required of him and to give the notes provided for in the agreement. The defendant replied that he was sorry he could not go on with the contract, as he had not yet succeeded in disposing of Smith and had been advised to settle that matter before going further with the plaintiff.

*M. S. Holbrook*, for the plaintiff.

*G. A. A. Pevey*, for the defendant.

BRALEY, J. In a suit for specific performance, before relief can be granted, the plaintiff must prove the existence of a contract which can be enforced. It apparently was understood that the defendant was to sell to the plaintiff a going business enterprise, including full possession of the premises where it was conducted, and thereafter, within certain prescribed areas, neither for a term of years was to solicit trade in the territory of the other. The parties having discussed the subject and agreed upon details, it is stated in the report that the writing which had been prepared embodied the proposed contract. It was to this paper alone that the defendant referred, when he delayed its execution, to enable him to arrange a settlement with an employee, whom he must discharge when the store where he was employed should be transferred to the plaintiff. If the evidence tended to prove that, having been rivals in business before the writing was drawn up, they afterwards rendered mutual assistance in certain mercantile affairs in which because of their intended agreement each was interested, these transactions should be regarded as merely supplemental, but forming no part of the actual bargain. The plaintiff's understanding also that the writing alone expressed their agreement was manifest when he assented or yielded to further delay, upon the defendant's assurance that the adjustment should not be a precedent condition to his final execution of the instrument. If the unsigned writing, therefore, is regarded as being the definite agreement, it never

came into existence as a contract or became binding, because it was left unexecuted by the parties. *McIntire* v. *Bowden*, 61 Maine, 153. *Mississippi & Dominion Steamship Co.* v. *Swift*, 86 Maine, 248.

But, if the bill is considered as seeking to enforce an oral promise by the defendant to enter into the formal writing, as containing all the essential elements of the contract, it cannot be maintained. The agreement proposed should be construed as embracing the sale of personal property, and the transfer of the defendant's leasehold interest in the premises. *Locke* v. *Homer*, 131 Mass. 93. *Cincinnati, Sandusky & Cleveland Railroad* v. *Indiana, Bloomington & Western Railway*, 44 Ohio St. 287, 314, 315. By the statute of frauds such an agreement was required to be in writing, and an oral promise to execute a contract embodying these terms also comes within the statute. *Colman* v. *Packard*, 16 Mass. 39. *Stevens* v. *Stevens*, 11 Met. 251. *Glass* v. *Hulbert*, 102 Mass. 24. *Chase* v. *Fitz*, 132 Mass. 359. *Howard* v. *Easton*, 7 Johns. 205. R. L. c. 74, § 1, cl. 4; § 5.

The plaintiff further claims there was a complete oral contract, which has been taken out of the statute by an acceptance of part of the goods, and also because there has been a partial performance by him. If the contract is treated as separable, and enforcement of the provisions relating to the sale of the personal property alone is asked, the receiving of a trifling amount of the goods by a corporation in which the plaintiff was interested is said to have been an acceptance by him of a part of the purchase. *Adams* v. *Messinger*, 147 Mass. 185. But it further appears that the defendant understood, or asserted, that the transaction was an independent sale, nor was there evidence that the corporation was authorized to act as the plaintiff's agent or bailee. At most, the obtaining of a part not having been contemplated by the contract, which provided only for the sale of an entire stock of goods connected with an existing business, there has not been a clear and unequivocal act of either delivery or acceptance which concludes the defendant from relying on the statute. *Marsh* v. *Hyde*, 3 Gray, 331, 333. *Howe* v. *Hayward*, 108 Mass. 54, 55. *Kemensky* v. *Chapin*, 193 Mass. 500, 506.

While the equitable remedy of specific performance applies to a sale of chattels, where it appears that damages for a breach

in an action at law do not afford an adequate remedy, the doctrine of part performance is inapplicable, as it is acceptance by the purchaser of a part of the goods or part payment by him which makes the contract binding. *Britain* v. *Rossiter*, 11 Q. B. D. 123. No written memorandum then being necessary, the statute is satisfied.

But if a sufficient delivery and acceptance are assumed, the stipulation for the plaintiff's assumption of the lease of the store for the remainder of the term cannot be separated from the sale of the merchandise and business, of which it evidently formed an essential part, and the contract being entire was within the statute. *Irvine* v. *Stone*, 6 Cush. 508. *French* v. *Boston National Bank*, 179 Mass. 404, 407. *Hurley* v. *Donovan*, 182 Mass. 65, 69. *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474, 476.

To justify relief, the plaintiff then must show, that by his part performance he has been placed in a position where a refusal by the defendant to further execute the contract is a fraud on him, which a court of equity will not sanction. *Glass* v. *Hulbert*, 102 Mass. 24, 31. *Graves* v. *Goldthwait*, 153 Mass. 268, 269. If in expectation of performance by the defendant the plaintiff has incurred expenses, and made changes in his business which have resulted in pecuniary loss, such transactions, not having been either expressed or referred to, were not within the terms of any existing agreement, nor are they shown to have been entered upon with the actual knowledge or assent of the defendant, but having been purely collateral cannot be taken advantage of as a partial execution. *Potter* v. *Jacobs*, 111 Mass. 32, 37. *Barnes* v. *Boston & Maine Railroad*, 130 Mass. 388, 390. *Graves* v. *Goldthwait*, 153 Mass. 268. *Powell* v. *Lovegrove*, 8 DeG., M. & G. 357.

If there was no enforceable contract, the insolvency of the defendant, on which the plaintiff finally relies, does not confer jurisdiction in equity to assess damages for a breach rather than to remit him to an action at law.

We have treated the offer of proof as constituting the evidence on which the plaintiff rested his case, and, for the reasons stated, a majority of the court are of opinion that the findings of the trial judge and his ruling that the bill should be dismissed were right.

*Decree accordingly.*